JOHN A. BUCKSTAFF ET AL., APPELLEES V. JOHN J. DUNBAR ET AL., APPELLANTS.

**Mechanic's lien.** Upon the facts stated in the opinion, *Held*, That the parties furnishing material for the erection of a dwelling house were entitled to a mechanic's lien thereon.

APPEAL from Lancaster county. Heard below before POUND, J.

*O. P. Mason*, for appellant.

*Burr & Marshall*, for appellee Buckstaff.

*Harwood & Ames*, for appellees Hoagland Brothers.

MAXWELL, J.

On the 2d day of November, 1880, one William Pound held a contract of purchase from the state for the north half of the south-east quarter of sec. 10, township 8, range 6 east of 6th P.M., the contract price being the sum of $720, one-tenth of which had been paid. On that day he went to Mr. Buckstaff's lumber yard, in Lincoln, and represented to him that he was the owner of the land above described and desired to purchase lumber to erect a house for a home on said land; he wanted $500 or $600 worth. On that and the succeeding day lumber to the amount of $261 was sold to him by Buckstaff, being carried away by the teams of the appellant. Being unable to obtain more lumber from Buckstaff, Pound, on the 4th of November of that year, applied to Hoagland Brothers, of Lincoln, and stated that he was going to erect a dwelling on his farm near Centerville—giving the above description of the land, and desired to purchase lumber, which he would pay for within sixty days. Lumber to the amount of $279.46 was there-

upon sold to him, being delivered between that time and the 17th of the month, the lumber being hauled by Mr. Dunbar's teams. On the 5th of November of that year, Dunbar, in answer to an inquiry by Hoagland, said "that Pound was all right, and we would get our money without doubt." Hovey & Peck also filed a lien for hardware sold to Pound, the amount claimed being $37.50. These parties filed mechanics' liens upon the interest of Pound in the land and buildings thereon, and this action is brought to foreclose the liens. Pound makes no defense. Dunbar claims to have purchased the land in question from Pound about the middle of October, 1880, the assignment of the certificate being dated November 2d of that year, and the consideration being the sum of $200, to be paid as hereafter stated. And he further claims that Pound was to erect the house in question at his own cost and expense for the sum of $600, Pound to be permitted to reside therein with his family for one year after its completion. He therefore alleges that the lumber and material being sold to Pound upon his individual responsibility the property in controversy is not subject to a mechanic's lien. On the trial of the cause the court rendered judgment against Pound for the amount of the claims and ordered the house and the interest of Dunbar in the premises to be sold to satisfy the same. Dunbar appeals to this court.

It appears from the testimony that the only party who had possession of the premises at the time of the sale and assignment of the certificate of purchase was Pound, and that such possession continued without interruption until after the house was erected. It also appears that Dunbar paid the carpenters for building the house, Pound stating that he was unable to do so. The testimony fails to show that Dunbar notified any of these material men that he was the owner of the premises, although he knew, or at least had cause to know, that the lumber and material were being furnished to Pound, upon the belief that Pound was

the owner of the same.    Suppose Mr. Dunbar had pur-
chased a horse or other personal property of Pound, and
without a change of possession or any act to indicate a
change of ownership had permitted Pound without objec-
tion to sell or mortgage such property to one who purchased
or took a mortgage on the property in good faith, could
Dunbar assert his ownership over that of such purchaser or
mortgage?    That he could not I believe all the cases agree.

In 1 Greenleaf Ev., § 207, the rule is thus stated:
Admissions, whether of law or fact, which have been acted
upon by others, are conclusive against the party making
them in all cases between him and the person he has thus
influenced.    It is of no importance whether they were
made in express language to the person himself, or *implied*
from the open and general conduct of the party.    For in
the latter case the implied declaration may be considered
as addressed to every one in particular who may have oc-
casion to act upon it.    In such cases the party is estopped on
grounds of public policy and good faith from repudiating his
own representations.    The rule is, that a party who negli-
gently or culpably stands by and allows another to contract
on the faith and understanding of some fact which he can
contradict, cannot dispute that fact in an action against the
person whom he has assisted in deceiving; as, where a vendor
is held out, or is suffered to hold himself out as authorized,
the owner is concluded.    *Stephens. v Baird,* 9 Cow., 274.
*Pickering v. Busk,* 15 East., 38.    *Dyer v. Pearson,* 3 B.
and C., 38.    In the case under consideration, Dunbar not
only failed to state to these parties that he had purchased
the premises, but assured the Hoaglands that Pound was
all right and they would receive their pay.    To permit a
party to acquire property in this manner, of which others,
with his tacit approval, had been defrauded, would be a re-
proach upon the law.    Pound was not a builder, as Dun-
bar was well aware, and it is very clear that he could not
have purchased the lumber upon credit except upon the
supposition that he was the owner of the land.

The case differs from that of *Doolittle v. Goodrich*, 13 Neb., 296. In that case one McLelland, a builder, purchased lumber on his own account to erect a house for one Francis Goodrich. There was no pretense that the house was to be erected for McLelland, and the only question for determination was whether or not McLelland was the agent of Goodrich, and the court held that he was not.

A material fact in this case is the consideration paid by Dunbar to Pound. It appears from Dunbar's testimony that he sold one-half of a stallion to Pound for the sum of $600. Of this sum $200 was to be applied in payment of the land, and $400 to be payment of the house. It also appears that the $400 was secured by a chattel mortgage on the horse. He testifies that the mortgage was given up to Pound after the erection of the house, and that the matter was then settled in full. He afterwards states that in July, 1881, he wrote to Pound "to bring the horse back and fix or there would be 'trouble;'" that Pound thereupon brought the horse back and he gave him a mule and $200 for his interest. Dunbar thus in fact paid but little more than the value of Pound's interest in the land as agreed upon by the parties themselves. It is very clear that justice has been done, and the judgment is in all things affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.