## BADGER LUMBER COMPANY, Appellant, v. W. F. LYONS ICE & POWER COMPANY et al., Respondents.

### Kansas City Court of Appeals, October 6, 1913.

1. **MECHANIC'S LIENS: Entire or Separate Contracts.** Plaintiff contracted with an owner to furnish materials for a building and to deliver them when ordered and as needed. There was no lump sum agreed upon nor time stated when the account should cease, nor was the sale made with reference to any architect's plans of the building. The goods were furnished on a running account with reasonable regularity for nearly a year and up until May. From this time until the following October no materials were ordered or used. The building was not completed in May but the owner ceased operations for lack of money to run his business. Having succeeded in leasing the building in October the owner ordered further materials which were furnished and charged to the account and used in finishing the building. There was no refusal to extend credit further on the part of plaintiff and no closing of the account between the parties. *Held*, that the last items charged in October were not sold under a different contract but the whole account was under one entire general contract, so as to give plaintiff six months from the date of the last items in which to file his lien. The fact that the owner volunteered to pay cash for certain other items not included in the account and did pay cash for them will not change the contract as to subsequent items sold on credit as before unless the vendor refused to sell longer on the old contract.

2. ————: ————. Where the evidence is conflicting, or where the circumstances are such as that different inferences may be drawn from the same facts, the question whether goods are sold under one or under different contracts is for the jury. But where there is no dispute as to the facts, the question is one of law for the court.

3. ————: ————: **Running Account.** A running account is a mutual account between buyer and seller in which is charged from time to time, as ordered, the materials sold, and on which is entered the various credits to which the seller is entitled.

4. ————: ————. If the work to be done is distinct and separate in its nature, and is performed at different times, or if two different contracts are in fact made for different

parts of the work, these are marks to show that there was not one entire general contract covering the whole account. But if material is furnished all going to the same general purpose, though such work be done or ordered at different times, yet if the several parts form an entire whole, or are so connected together as to show that the parties had it in contemplation that the whole should form but one and not distinct matters of settlements the whole account must be treated as a unit.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

REVERSED AND REMANDED (*with directions*).

*Botsford, Deatherage & Creason* for appellant.

*Lathrop, Morrow, Fox & Moore* for respondent, W. F. Lyons Ice & Power Co.

*Bowersock, Hall & Hook* for respondent, Fidelity Trust Co., Trustee.

TRIMBLE, J.—Suit to enforce a mechanic's lien for lumber and materials sold by appellant to the W. F. Lyons Ice & Power Company for the purpose of, and used in, constructing an ice manufacturing and meat packing plant. A jury was waived and the case was tried by the court. Appellant obtained judgment for $2918.45 on the account sued on, but was denied a lien.

It is clear, from the finding of facts preserved in the record, that the only reason a lien was refused was because the court thought the last two items in the account were sold under a different contract from that under which the rest were sold. If the two last items were sold under a separate contract, they could not be considered as a part of the original account, and if they were not a part of it, then the lien was not filed within six months after the account accrued. All other requirements of the statute for the establishment of a lien were complied with.

The first item in the account is dated September 3, 1908, and from this time the account continues down to and including May 3, 1909. From this date until October 9, 1909, there are no items charged and no materials were sold. But, on this date, an item of 4000 square feet of insulating paper was sold, and on October 12, 1909, an item of sixteen pieces of two inch by six inch No. 1 yellow pine lumber twenty-two feet long, was sold to the company and used by it in the building. The lien claim was filed January 29, 1910. If the two items above mentioned were sold under a separate and distinct contract from that under which the rest of the account was sold, then, of course, the account did not accrue on October 12, 1909, but accrued on May 3, 1909, which was more than six months prior to the filing of the lien claim. If, however, the last items were sold under the same general contract as the others were, then the lien was filed in time and should be enforced. So that the only question in the case is whether or not the materials bought and used in October, 1909, were furnished under such circumstances as to show they were sold, with the others, under one entire general contract, so as to give appellant six months from October 12, 1909, instead of from May 3, 1909, in which to file a lien claim.

Where the evidence is conflicting, or where the circumstances are such as that different inferences may be reasonably drawn from the same facts, such a question is one for the jury. [Darlington Lumber Company v. Smith Building Company, 134 Mo. App. 316; Cole v. Barron, 8 Mo. App. 509.] This rule is well established and is not disputed. The contention of appellant is that the evidence shows that all of the items, including the last two, were sold under one entire general contract, and that there is no evidence upon which can be based the trial court's finding that the last items were furnished under a different one. If this contention is true, it is within our power to

review the trial court's finding. If it is not true, that
is, if there is any evidence supporting such finding,
then it is a matter beyond our ken since we cannot
weigh the evidence. To ascertain the truth of the mat-
ter requires a very careful examination of the entire
record and of all the inferences to be drawn there-
from. As a result of such examination, it can be
said that there is practically no dispute as to the facts
which govern this final and ultimate question of
whether the items in the account were furnished un-
der one general contract or under two. So that, after
all, in this particular case, the question whether the
materials were furnished under one or two contracts
resolves itself into what inference the law will draw
from what the parties to the contract did. As said in
Page v. Bettes, 17 Mo. App. 375: "The jury are to
find what the contract in fact was; and whether the
contract thus found is entire and continuing, is a ques-
tion of law for the court." If, therefore, the undis-
puted evidence shows what the contract was, and that
the materials were furnished thereunder according to
that contract, then the question whether the contract
is entire is a question of law. [Phillips on Mechanic's
Liens, sec. 325.] And if the trial court has erred in
its view as to what constitutes an entire contract, then
it is our duty to correct that error.

It should be borne in mind that, so far as the
contract is concerned, the only requirements demanded
by the statute are that the materials for which a lien
is sought must be furnished "under and by virtue of
a contract with the owner" (Sec. 8212, R. S. Mo. 1909).
Of course, this means that all the items in one lien
account must have been furnished under the same con-
tract. But if the evidence shows that all the items
were furnished "under and by virtue of" one contract,
then the vendor is entitled to his lien although there
may be facts and circumstances showing that they

174 Mo. App.—27

were furnished at different times and were rendered necessary by different conditions. A running account is deemed an entire contract, and for the purpose of fixing the time for filing the account to perfect a mechanic's lien, each item of the account relates to the last item delivered. [Stine v. Austin, 9 Mo. 558; Phillips on Mechanic's Liens, sec. 325; Big Horn Lumber Co. v. Davis, 14 Wyo. 455.]    There is no doubt but that the account in this case was a running account. It was a mutual account between buyer and seller in which was charged from time to time, as ordered, the materials sold, and on which was entered the various credits to which the seller was entitled by reason of payments made and articles returned. [7 Words and Phrases, 6277.]    Of course, if the materials were sold under separate and distinct contracts, then the mere fact that they were all charged in the form of a running account would not make them lienable under one contract. But, unless there is evidence to show a separate and distinct contract as to the last items, the account will be taken and considered, as it appears to be, a running account arising under and by virtue of the contract out of which the account originally grew.

In discussing the question when materials are to be considered as having been furnished under an entire or under separate and distinct contracts, Phillips on Mechanic's Liens, section 229, mentions several circumstances as marks to determine the matter. If the work is *distinct in its nature,* and is performed at different times, or, if two *distinct contracts* are in fact made, for *different parts of the work,* these are marks to show that there was not one entire general contract covering the whole account. "But when material is furnished, *all going to the same general purpose,* as the building of a house or any of its parts, *though such work be done or ordered at different times,* yet if the several parts form an entire whole, or are so

connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct matters of settlements, the whole account must be treated as a unit, or as being but a single contract." [Phillips on Mechanic's Liens, sec. 229.] And in Bruns v. Braun, 35 Mo. App. 337, l. c. 344, it is held that if a vendor should agree with the owner to furnish all the materials in the construction of a building, and after the work had progressed the owner should conclude to make changes in his original plan, or use some materials different from that originally contemplated and should even agree as to the additional cost of construction, or if they should agree to leave that for adjustment on a settlement, it could not be held that the additional materials were furnished under a separate and distinct contract, although they may have been ordered at different times. Where materials are furnished as the same are required without any specific agreement as to amount or the time within which they are to be furnished, and the items bought from time to time form parts of a connected whole in the building to which they are furnished, and there is nothing to indicate that the work is completed so as to lead the vendor to believe the account is ended and no further material will be required of him, the vendor is entitled to a lien as under an entire contract. [2 Jones on Liens, sec. 1435.] Where it is specially agreed or impliedly understood between the parties that the account is to be kept open and continued as one and the same continuous transaction and course of dealing, the account will be considered as one continuous account and one demand, and it is immaterial that the furnishing of the articles may have extended over a long period, or that several months may have elapsed between two items of the account. [2 Jones on Liens, sec. 1435.] Even where materials have been furnished confessedly after the substantial completion of the building, yet, if the work was nec-

essary to the comfortable and proper use thereof, and
the materials were not furnished for the mere purpose
of preserving a lien, but were reasonably within the
purview of the original contract, and no rights of third
persons have intervened, the final furnishing of ma-
terials is regarded as sufficient to preserve the lien.
[2 Jones on Liens, sec. 1444.]

What, now, are the facts in this case bearing on
the question of whether the materials were furnished
under one entire contract or under two separate and
distinct contracts?    The contract for the materials
was made between Larsen, appellant's general man-
ager, and W. F. Lyons, who was the president and
the owner of practically all the stock in the W. F.
Lyons Ice & Power Company.  As stated, the intention
was to build an ice manufacturing and meat packing
plant.   Appellant was informed of this, and it was
agreed that Lyons would order whatever materials
were needed from time to time and that appellant
would furnish them.   While some of the material was
on a list which the two above named men had, yet it
was understood between them that this list did not
contain all the material wanted, and in fact a great
portion of the material never was on any list but
was furnished as called for.   The material was not
furnished according to plans or specifications of the
buildings.   While Lyons had plans and specifications
from an architect by which he proceeded to erect the
buildings, yet the contract for the purchase of the
materials said nothing about any plans, and appellant
never saw them.  Neither was the contract limited to
any definite or lump sum, nor was any time specified
when the account was to close and become due.  Both
Larsen and Lyons testify to all this, and, as no one
else was present, there is no one to dispute the nature
of the contract.  Neither is it necessary to rely on
any inference or presumption arising from the after
occurring facts, since in the face of this clear and un-

disputed contract there is no room for inference or presumption. The erection of the buildings was proceeded with from the time of the contract, and appellant furnished materials from time to time as they were ordered. At the end of each month bills for the amount furnished to that date were rendered and payments were made on the account from time to time. Before the plants were finished, the company moved into the building and began operations, and appellant continued to furnish materials long after such occupancy and operation. They continued to be furnished down to May 3, 1909, when the packing part of the plant shut down, but the ice making part continued in operation. No materials were ordered between May 3, 1909, and sometime in October of that year, nor were any furnished during that time, and consequently there is a break in the continuity of the dates of furnishing the items from May 3, 1909 to October 9, 1909. At the time Lyons ceased ordering in May, 1909, it is important to note that *the building was not complete,* there was no termination of the account, and no announcement of the completion of the building. Neither was there any settlement between appellant and the Lyons Ice & Power Company, or determination of the amount due thereon. Appellant was asking for payments to be made on the account, it is true, but this had been done all along and payments had been made from time to time prior to May 3, 1909. Nor did appellant at any time declare the account ended and refuse to extend credit further. Both Lyons and Larsen testify to this.

The packing part of the plant shut down in May, 1909, on account of lack of money to operate it. About October 1, 1909, the Lyons Ice & Power Company leased the packing part of the plant to the Indianapolis Abattoir Company. That company required the Ice & Power Company to finish up as a tallow cooling room a certain portion of the space in the building

which had been intended for a hog cooling room but which had not been finished for that purpose, and was used as an office by the Ice & Power Company. In other words, the room in question was intended for a hog cooling room but had not been finished up for that purpose, and the Ice & Power Company was required to finish it for a tallow cooling room when it was leased to the Indianapolis Company. The only difference between the two cooling rooms would be that the ceiling in the room used as a hog cooler would have to be higher than if the room was used as a tallow cooler. To finish it either way required the same materials as were furnished in the last items. It was for the purpose of finishing up this unfinished, intended, hog cooler room as a tallow cooler that the two last items in the account dated October 9, and October 12, 1909, respectively, were furnished. There was some other work to be done by the Ice & Power Company in order to make the plant suit the Indianapolis Company, and also some which the Indianapolis Company was to do at its expense, but as no items for this other work entered into the account sued on, this other work is immaterial except as showing the reason for Mr. Larsen's going out to the plant at the time work was resumed on the building in October, 1909. He went out there, not for the purpose of making a new contract with the Lyons Ice & Power Company, but to give to the president of the Indianapolis Company an estimate of what the material would cost to make the necessary arrangements it was to do at its expense. There is no testimony that any new or different contract was entered into between appellant's manager, Larsen, and the Lyons Ice & Power Company. The two items of October 9 and October 12, 1909, were sold on credit for use in finishing up the cooling room and was charged on the account as the other items were charged, and were no different from what would been needed had the room been finished

as a hog cooling room. And the court, in its findings of fact, states that these items were not charged to the account by appellant for the purpose of extending the time for filing its lien but were sold in good faith for the purpose of being used, and the same were used, in the construction of the building in question. If they were sold in good faith as a part of the running account between appellant and the ice company, and to be used in completing the building, then, appellant ought not to be deprived of its lien on the ground that the last two items were sold under a different contract unless there was a new and distinct contract entered into between the parties, or sufficient notice brought home to appellant that the materials were ordered under a different contract or were for such an entirely different purpose that they could not be considered as a part of the original contract. In this case there are no equitable rights of others to intervene. The defendant owner and the holders of the deeds of trust thereon knew, before their interests therein came into existence, that the amount of appellant's account for which it sues was unpaid and that a lien therefor would be claimed.

But respondent contends that when the Ice & Power Company began ordering materials in October, it paid cash for a part of what it then bought and this fact creates a new and distinct contract different from the one under which the former items were sold, which new contract includes the two items which were sold on credit and charged. It is undisputed, however, that appellant did not demand cash. Larsen testifies that he never refused to extend credit and Lyons says the only reason he paid cash was, not because Larsen demanded it, but because the account was already so large, and a payment had not been made thereon for so long a time, that he did not feel like ordering more stuff without paying for it as he got it. As the appellant received cash for certain items no bookkeeping

was done as to them and hence they do not appear on the account. But the evidence is uncontradicted that the two last items were ordered and used, that no cash for them was demanded, and that no cash was ever paid therefor, but that they were sold and charged as other items had been. It clearly appears that the two last items were used within the purview of the purpose contemplated by the parties in entering into the contract at first. But it does not clearly appear what the *cash* items were used for. For aught that we know, these cash items may have been for materials necessary to make the *alterations* demanded by the Indianapolis Company and which could not be considered as going into the erection of the building as contemplated by both parties at first. We do not say that, if they did, this would make them the subject of a separate and distinct contract, but, if they were for a different purpose than that within the purview of the original contract, then the fact that they were purchased and paid for in cash would not have the effect of causing other items, clearly within the original contract and not paid for, to be held to have been purchased under the separate contract. The mere fact that one who has purchased goods on a running account buys a few articles on a cash basis, at *his* suggestion, will not cause articles purchased later on credit, *and for the original purpose*, to be deemed to have been purchased under a new and distinct contract. And the fact that the vendor, acting in accordance with the suggestion of the vendee, sells certain items on a cash basis, will not change the rest of the account, sold thereafter as before, to a different contract. The statute makes no such limitation, but merely requires that if the materials were sold "under and by virtue of one contract" and were used in the erection of the building contemplated by the parties, and a lien claim was filed within a certain time after the indebtedness accrued, then a lien should be had. We

think the evidence all showed this, and that there was
no evidence to the contrary. It showed that the mate-
rials were all furnished for the same building in in-
stallments and at intervals, and the parties intended
them to be included in one account and final settlement,
and such was the contract expressly entered into by
Larsen and Lyons. In such case the entire account
will be treated as a continuous and connected trans-
action and the lien limitation will begin to run from
the last item of it. [Darlington Lumber Co. v. Har-
ris, 107 Mo. App. 148, l. c. 155.] The evidence being
uncontradicted that no new contract was demanded by
appellant or made between the parties empowered to
make it, appellant ought not to be deemed to have
sold the last items under a new contract and thereby
lose its lien and consequently its money, unless the
evidence clearly shows there was a new contract. The
case is not like those where materials were furnished
without original specific agreement, or where work dif-
ferent and *distinct in its nature* is done and the mate-
rials relied upon to save the lien were sold for such
distinct work; nor is it like those where the work
*has been completed* and extra work is required. In
this case the materials were all clearly purchased and
used for the same general purpose originally contem-
plated; there was no finishing of the building, nor was
there any recognition that the account was closed by
either party. Neither was there a refusal to extend
credit further. Both Lyons and Larsen, the men who
had the authority to, and did, make the contract say
there was no refusal. And the fact that credit was
in fact afterwards extended shows that there was no
refusal to sell further on credit. The testimony of
Fowler, one of the carpenters working about the build-
ing, that "I think Mr. Larsen and I understood each
other that the stuff was to be cash," was nothing more
than a mere conclusion, and would not warrant a find-
ing that a new contract was made. Besides, Fowler

was not making a contract. He was merely ordering the lumber as needed. Neither could Larsen's remarks, when told by Fowler that the materials needed for the *alterations* required by the Indianapolis Company would be cash, to the effect that "he supposed I understood that the Lyons Ice & Power Company owed them quite a large bill that was unpaid, and he didn't suppose the firm would want to extend the credit further" be construed into a demand that a different contract be made. At most it was but assenting to the proposition stated by Fowler and the expression of a desire that the bill would not grow too large.

The respondent urges that no lien ought to be given because the prices charged on some of the items were greater than agreed upon. The evidence shows that if there was any overcharging it was unintentional, at least it conclusively appears that there was room for an honest difference of opinion as to the prices to be charged. Much lumber was bought in addition to the first list. It is also clearly shown that, if any items were overcharged, they were, and are, easily separable from the others; and as the court found that the plaintiff was entitled to a judgment for a sum less than the amount of the account, it is presumed that in doing so it made all necessary deductions on account of erroneous charges. Certainly, if there were any overcharges included in the account, the plaintiff would not be entitled to a judgment for them and the court would not render judgment for more than the amount due under the contract. Besides, the court did not refuse the lien on this ground but on the sole ground that the last two items were furnished under a separate and distinct contract. There being no evidence from which it could correctly draw such a conclusion, the case is reversed and remanded with directions to enforce the judgment as a lien upon the building and premises described in the petition. All concur.