W. G. TULL, Plaintiff, v. FRANK C. FLETCHER et al., Defendants, FRANK C. FLETCHER and ADARESTA T. FLETCHER, his wife, Respondents; BERKSHIRE LUMBER COMPANY, Appellant.

Kansas City Court of Appeals, June 11, 1917.

1. **MECHANIC'S LIENS: Transfer of Property: Notice.** B. while owner of the real estate contracted with a materialman for all the materials required for a residence thereon, and, in the midst of the construction thereof, conveyed the property to another. *Held,* that this did not affect the materialman's right to a lien as an original contractor even though most of the materials were delivered and built into the property after such transfer. The contract with the owner having been made and the delivery of the materials having commenced while B. was such owner, the materialman was not bound to take notice of any subsequent conveyance of the property.

2. ———: Materials: Lienable Items: Laundry Posts. Where a contract provided for the furnishing of all the materials required for the construction of a residence, an item for lumber used in constructing laundry posts in the yard constitutes a lienable item, as the improvements were for the purpose of transforming the lot into a residence, the posts were a part of those improvement, and, with the house and all other appurtenances permanently erected on the lot, formed one complete and entire affair, purchased under the same contract, and the whole formed one general improvement of the property.

3. ———: ———: Contract. Where a contract between an owner of property and a materialman provided that the materialman is to furnish the owner all the materials he requires for the improvement of the property, the materialman is bound to deliver all that the owner orders.

Appeal from Jackson Circuit Court—*Hon. Thomas J. Seehorn,* Judge.

REVERSED AND REMANDED (*with directions.*)

*Ellis, Cook & Barnett* for appellant.

*Ball & Ryland,* for respondent.

TRIMBLE, J.—The suit out of which this appeal grew was brought as an equitable action, under sections 8235a-g (Laws 1911, p. 314), by one of several lien-claimants to determine for all parties the various rights involved in the matter of the establishment and enforcement of certain mechanic's lien-claims. The chancellor heard the case in all its ramifications and rendered a decree adjusting and disposing of the different claims. Of these, only one now remains in controversy, that of the appellant the Berkshire Lumber Company, to whom the chancellor awarded a personal judgment for the value of the lumber and materials it furnished, but denied a lien therefor.

Before rendering his decree the chancellor made a finding of facts. And in the statement of the case which we hereinafter make, only such facts are stated as were found by him or which are conceded in the evidence of both sides to the appeal.

On June 6, 1913, Clarence L. Brown became the owner of Lot 48 in Bowling Green an addition to Kansas City, otherwise known by its street number as 26 East 56th Street Terrace. While still the owner there-

of, and sometime previous to June 24, 1913, he con-tracted with the Berkshire Lumber Company, the ap-pellant, to furnish and sell to him "all the lumber which said Brown should require in the erection and installa-tion of improvements which said Brown was then be-ginning upon the said property." These improvements were for the erection of a dwelling on said lot and the making of the same into a place of residence.

Pursuant to said contract, appellant on June 24, 1913, began delivering upon the property the lumber and materials for which the lien now in question is sought, and Brown commenced the improvements. Thereafter, and while the improvements were in the course of erection, Brown, on July 1, 1913, by warranty deed transferred the lot to the Fletchers, the respond-ents herein. This deed was made pursuant to a con-tract Brown had with the Fletchers to transfer said lot to them and to erect thereon a residence with appur-tenances for a stipulated sum which was to include the purchase price of said lot. This contract was dated June 12, 1913, and may have been in existence at the time Brown contracted with the Lumber Company for the materials, but said company had no notice nor knowledge of the Fletcher contract until at the trial of this cause in November, 1915.

After deeding the property to the Fletchers, which deed was recorded July 3, 1913, but which contained no reference to the contract of June 12th, Brown continued making the improvements on said lot; and appellant, from time to time as ordered, delivered on said prop-erty the materials therefor under the contract it had with Brown to furnish *all that he should require* for that property. Said materials, so furnished and deliv-ered, were all built into the permanent improvements on said property and were all charged in one running account against Brown for that lot.

The first item in the account was dated June 24, 1913, and the last item was dated November 4, 1913. The item next before the last was dated September 29, 1913. The lien-claim was filed April 8, 1914. Conse-

quently, if the item of November 4th can be properly included in the account as lienable, then the lien-claim was filed within the six months given by section 8217, R. S. 1909, to an original contractor in which to file his claim for lien. But if the item of September 29th must be taken as the end of the lienable account then the lien-claim was not filed within six months thereof. On the theory that the item of November 4th should not be considered, and that the account must be deemed to have accrued on September 29th, the chancellor denied the lien because the lien-claim was not filed within six months of that time. This is the only matter affecting appellant's right to a lien. In all other respects the requirements of the statute for the establishment of a lien by an original contractor were complied with. The theory upon which the court decided that the item of November 4th could not be considered as the end of the lien account will be stated later.

It will be observed that Brown, while owner of the real estate, contracted with appellant to furnish *all the materials he should require* for the residence he was creating on said lot and that in the midst of the construction thereof he conveyed the property to the Fletchers. This does not affect appellant's right to a lien as an original contractor, even though most of the materials were delivered and built into the property after such transfer. [McAdow v. Sturtevant, 41 Mo. App. 220, 227; Williams v. Chicago etc. R. Co., 112 Mo. 463, 501; Hammond v. Darlington, 109 Mo. App. 333, 343; Miller v. Barroll, 14 Md. 173; Wagenstein v. Jones, 65 N. W. 717; Jeffersonville Water Supply Co. v. Ritter, 138 Ind. 170; Green v. Williams, 92 Tenn. 220; Gale v. Blaikie, 126 Mass. 274; McNeal etc. Co. v. Howland, 111 N. C. 615; 27 Cyc. 218.] And appellant having contracted with Brown, the owner, and the furnishing of the materials and the constructing of the improvements having commenced while he was such owner, appellant was not bound to take notice of any subsequent conveyance of the property. [Fourth Avenue Baptist Church v. Schreiner, 88 Pa. St. 124.] And as appellant had no

notice nor knowledge of Brown's contract with the Fletchers until long after all rights had accrued and become fixed, the question of appellant's right to a lien must be considered *throughout* on the basis of appellant being an *original contractor* dealing with the *owner* of the property. This feature must not be lost sight of and is important, as will more clearly appear later on. Under the circumstances of this case, there never was a time when the Fletchers, the subsequent owners of the property, were entitled to have appellant's right to a lien considered on the theory that, as to the last item of said account, Brown was a contractor and not an owner of the property.

The last item of said account was two pieces of 4 inch by 4 inch cypress, 14 feet long, set in concrete on the rear of said property as laundry posts and permanently affixed as an improvement of the same. Brown was a builder of many houses and it was his practice to erect, as a part of his improvement in building a house, laundry posts in the yard. The specifications for the improvements, in the contract the Fletchers had with Brown did not mention laundry posts, but Mrs. Fletcher says in her testimony that she talked about them when the house was being planned. When the Fletchers moved into the house on November 3, 1913, they noticed that there were no laundry posts installed. Mr. Fletcher then told his wife she had better request Mr. Merchen, Brown's carpenter foreman, to secure them. Mrs. Fletcher then inquired of Mr. Wagner, Brown's superintendent, if Mr. Brown would put them in and he told her that Mr. Brown would as it was usual for him to do so with all his customers. Wagner then reported Mrs. Fletcher's request to Mr. Brown and was instructed by said Brown to put them in. Wagner then ordered the lumber for said posts of the appellant and they were delivered on the property November 4, 1913, and the same, as two pieces of select cypress, were charged to Brown's account for said property. And they were then permanently affixed as an improvement on the property as hereinbefore stated. At this time

Brown had not completed the improvement of the prop-
erty under his contract with the Fletchers and did not
finish until Thanksgiving Day, November 27, at which
time he finished sodding the yard. The last carpenter
work on the house itself was done October 31st, but the
court found that Brown did not complete the improve-
ments on the property under his contract with the
Fletchers until long after said posts were erected.

The improvements were for the purpose of trans-
forming the lot into a residence. The laundry posts
were a part of those improvements, and, with the house
and all other appurtenances thereto, formed one entire
and complete affair. The laundry posts were perman-
ently erected on the lot and became a convenient and
useful adjunct to the property as a family residence,
the purpose for which it was intended. The lumber for
the posts was purchased under the contract *between
appellant and Brown* by which all the other materials
were bought. In other words, the lumber used in these
posts and the lumber used in the house were all bought
under one and the same *entire* contract, and the whole
formed one general improvement of the property. The
last item therefore cannot be eliminated from the ac-
count on the ground that it is not lienable because it
went to construct the laundry posts. Under the circum-
stances just stated they constitute a lienable item.
[Dugan Cut Stone Co. v. Gray, 114 Mo. 497, 500; Henry
v. Platt, 84 Mo. 237, 241.] The respondents do not con-
tend that laundry posts, purchased and constructed
under circumstances such as are above enumerated, are
not lienable improvements, nor did the trial court deny
the lien upon that ground. The lien was denied upon
the ground that in Brown's contract *with the Fletchers*
there was no requirements for laundry posts and that
Brown's subsequent consent to erect them was a mere
gratuity on his part, and for this reason the last item
in the account cannot be considered as any part of the
*original contract* and hence said item of November 4
cannot be treated as the last item of the lien account.
The court gave a declaration of law to this effect. But

it does not at all follow that because Brown was not required by his contract with the *Fletchers* to erect laundry posts, therefore he did not purchase the lumber under the contract he had with *appellant to sell him all that he should require* for the improvement of the lot. Indeed it is unquestioned, from the facts found by the chancellor, that the lumber for the posts was purchased by Brown, and sold and furnished by appellant, under the same contract *between them* as the rest of the materials were. The "original contract" governing appellant's right to a lien, in the circumstances of this case, is the contract between appellant and Brown, not Brown's contract with the Fletchers. Appellant had nothing to do with that and knew nothing of it. The contract which formed the foundation for a lien in this case, and which fixed the status of the parties with reference thereto, was the contract between Brown and appellant. This, as intimated above, was the contract which, throughout all the transactions that followed, fixed the status of appellant as an *original contractor* dealing with the *owner*. The Fletcher's subsequent acquiring of the title to the lot did not change matters. They knew that Brown was constructing the improvements when they got the lot from him. They knew that appellant was furnishing materials for said improvements and they allowed appellant to continue to furnish same without notice or knowledge of any contract they had with Brown. They took the lot under these circumstances *cum onere,* with the status of original contractor and owner *fixed* between appellant and Brown, and out of which, upon compliance with the necessary statutory requirements, a lien would necessarily evolve. Not only did the Fletchers allow appellant, without notice, to continue furnishing materials, including said last item for the posts, but they were the persons who had Brown to put up said posts. Under all these circumstances, appellant's right to a lien continued just the same as if there had been no transfer of the property to the Fletchers; and they are estopped to assert, as against appellant, that Brown was a contractor and not an

owner, even as to the item of November 4th; and they would also be estopped to deny that the posts were a part of the one general improvement of the property if in point of fact they were not. [Allen v. Sales, 56 Mo. 28, 37; United States Water Co. v. Sunny Slope Realty Co., 152 Mo. App. 300; Fire Extinguisher Co. v. Farmer's Elevator Co., 165 Mo. 171, 303; Weber v. Weatherby, 34 Maryland 656; Buckstaff v. Dunbar, 15 Neb. 115; Schultze v. Alamo Ice etc. Co., 21 S. W. 160.] Appellant, under its contract with Brown to furnish all the materials he required for the improvement of that property, was bound to deliver all that Brown ordered. [35 Cyc. 207; Laclede Construction Co. v. Moss Tie Co., 185 Mo. 25; Laclede Construction Co. v. Tudor Iron Works, 169 Mo. 137.] The Fletchers noticed the absence of laundry posts and asked to have them put in and Brown ordered the lumber from appellant and put the posts in before the improvement of the property had been completed by him. So far as appellant is concerned, and so far as its contract with Brown is concerned, there was nothing to show this last item was any different from any other item. It would seem that all these facts would estop the Fletchers from claiming anything to the contrary. However, as stated, the facts found by the trial court show that the last item was bought and furnished under the same contract with appellant as was the other materials and that they all went to make one general improvement as the whole. Hence we are of the opinion that appellant ought not to be denied a lien. The contract which fixes and determines the status of the parties with reference to the lien, and which is to be regarded as the contract furnishing the foundation thereof, is the one between Brown and appellant. The latter had nothing to do with Brown's contract with the Fletchers, and appellant's rights should not be affected by it since appellant had no notice of it. The fact that there was a lapse of time between the last item and the one next to the last does not change the matter. [Badger Lumber Co. v. Lyons Ice & Power Co., 174 Mo. App. 414; Darlington Lumber Co. v. Smith Bldg. Co., 134 Mo.

App. 316.] Nor do the circumstances under which Brown ordered the lumber in the last item make it the subject of a contract other than the one under which appellant sold the other materials. [St. Louis Fire, etc., Works v. Viviano, 185 S. W. 218, 220; Bruns v. Braun, 35 Mo. 337; Badger Lumber Co. v. Lyons Ice etc. Co., supra.] There was no definite or specified bill of lumber agreed upon in the contract appellant had with Brown. That contract was not made with reference to any specifications which the Fletchers had with Brown nor with reference to any contract whatever with the Fletchers. If Brown had remained the owner of the property he could not successfully claim that appellant should be denied a lien; and under the facts of this case the Fletchers are in no better position to contest a lien than he.

For these reasons we are of the opinion that the judgment denying appellant's lien should be reversed and the cause remanded with directions to decree a lien in accordance herewith. It is so ordered. All concur.