J. R. MEADE CO., a Missouri Corporation, Plaintiff-Respondent,

v.

FORWARD CONSTRUCTION COMPANY, a Missouri Corporation, et al., Defendants,

Avondel L. Gillian and Mary L. Gillian, his wife, et al., Defendants-Appellants.

WENTZVILLE DRYWALL CO., INC., a Missouri Corporation, Plaintiff-Respondent,

v.

FORWARD CONSTRUCTION CO., a Missouri Corporation, et al., Defendants,

Gideon H. Schiller et al., Defendants-Appellants.

C. L. MARTIN CONTRACTORS, INC., a corporation, Plaintiff,

v.

FORWARD CONSTRUCTION CO., a corporation, et al., Defendants,

Marion F. Heath and Nancy L. Heath et al., Defendants-Appellants.

Nos. 35505–35512, 35517, 35518, 35458.

Missouri Court of Appeals, St. Louis District, Division One.

May 20, 1975.

Motion for Rehearing or Transfer to Court En Banc or Transfer to Supreme Court Denied June 26, 1975.

Application to Transfer Denied Sept. 8, 1975.

Robert C. Jones, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, for appellants.

Bernard A. Barken, St. Louis, Lowell C. McGowen, Frederick W. Shultz, Francis L. Ruppert, Wion, Burke & Boll, Charles M. Schmidt, Stefan J. Glynias, Clayton, Niedner, Moerschel, Nack & Ahlheim, St. Charles, Charles E. Roth, St. Louis, for plaintiffs-respondents.

DOWD, Chief Judge.

Mechanic's lien suits. This is a consolidation of eleven separate appeals arising out of a consolidated trial held in the Circuit Court of St. Louis County. The suits were consolidated because common questions of law and fact were presented, as well as the identity of many of the parties.[1]

The suits all have the following common factors: (1) each suit was instituted as a mechanic's lien suit by one of the respondent contractors; (2) all respondents are contractors who contributed work and labor on buildings on separate lots in subdivisions in St. Louis County; (3) each suit resulted in judgments and liens declared for some of the contractors seeking liens; (4) each appeal is brought by defendants[2] who have an interest in the land and are thus contesting the imposition of the liens; (5) defendant Forward Construction Company hereinafter *Forward*) was the original owner of record of each lot and entered into construction contracts with each respondent.[3]

The respondent contractors involved in these appeals are as follows: J. R. Meade Co. (hereinafter *Meade*); Wentzville Drywall Company (hereinafter *Wentzville*); Karsten Plumbing Company (hereinafter *Karsten*); Beach Electric Company (hereinafter *Beach*); Archway Wholesale Supply Company (hereinafter *Archway*); Watts Construction Company (hereinafter

---

1. The transcript consists of 1500 pages and over 50 briefs were filed. We commend Judge Ninian M. Edwards for the competent manner in which he resolved numerous issues involved in this voluminous record.

2. The appellants are owners of the lots, trustees or *cestui que* trusts under deeds of trust, all recorded after construction began.

3. With the exception of No. 35518, as explained later.

*Watts*); Martin Korn (hereinafter *Korn*); Chromalloy American Company (hereinafter *Chromalloy*); and, N. B. West Contracting Company (hereinafter *West*).

The differences between the suits are: (1) each suit varies as to the amount of the judgment recovered by each respondent contractor; (2) each suit involves a different piece of property; (3) each suit involves different combinations of respondents; and, (4) in some suits, different theories are presented for contesting the liens.

Our task on each of the appeals is to determine if the liens in question were properly declared by the trial court. We will first discuss certain of the issues of law common to eight of the appeals. Thereafter, we will examine the unique arguments of each case separately.

Eight of the appeals[4] present virtually the same four issues in appellants' first Point Relied On. Generally, those issues are: (1) Was notice of the intention to file a mechanic's lien required to be served on the trustee and the *cestui que* trust of the deed of trust encumbering each property? (2) Was notice of the intention to file a lien required to be served on subsequent owners of the properties? (3) Were the trustees, *cestui que* trusts or subsequent owners required to be named on the mechanic's liens? (4) Were the lien statements required to be itemized, and if so, were the liens as filed in compliance with the statute? We take each point in order.

Appellants' first point is that the trustees and *cestui que* trusts were entitled to notice before a lien could be filed on the respective properties. They base this argument on § 429.100 RSMo 1969, V.A.M.S.[5] That section is from the chapter on "Liens Against Real Estate" and reads as follows:

"Every person except the original contractor, who may wish to avail himself of the benefit of the provisions of sections 429.010 to 429.340, shall give ten days'

notice before the filing of the lien, as herein required, to the owner, owners or agent, or either of them, that he holds a claim against such building or improvement, setting forth the amount and from whom the same is due. Such notice may be served by any officer authorized by law to serve process in civil actions, or by any person who would be a competent witness. When served by an officer, his official return endorsed thereon shall be proof thereof, and when served by any other person, the fact of such service shall be verified by affidavit of the person so serving."

A careful examination of the statute shows that the section does not apply to original contractors and also requires notice to be given only to "owners." Thus, in order to prevail, appellants must prove: first, that respondents were not original contractors, and second, that appellants fall within the class of "owners" entitled to notice. Examination of the cases in this state, as well as other states, convinces us that appellants fail in both requirements.

An "original contractor" is "one who makes a contract to perform labor or furnish materials with the then owner of the property." *Vasquez v. Village Center, Inc.*, 362 S.W.2d 588, 593 (Mo.1962). It is uncontroverted that defendant *Forward* was the owner of record of the property as of the dates each contract was executed. Each contract was executed between *Forward* and each respondent. Thus, each respondent is an original contractor.

We realize, of course, that the factual situation here is unusual; most of the respondents usually work as subcontractors, under one original or general contractor. The difference here is that *Forward* is also the owner of the property. We are mindful also that this result produces all original and no subcontractors. This in no way

---

4. *J. R. Meade v. Forward Construction Co., et al.,* Numbers 35505, 35506, 35507, 35508, 35509, 35510, 35511, 35517.

5. All statutory references will be to RSMo 1969.

offends the purpose of the statute and the fact that this result is unusual does not require a change in the underlying definition of an "original contractor."

We note that our mechanic's lien law is remedial in nature and should be liberally construed. *Bremer v. Mohr,* 478 S.W.2d 14, 17 (Mo.App.1972). It has also been said that its purpose is to give security to mechanics and materialmen for labor and materials furnished in improving the owners' property and that the law should be construed as favorably to those persons as its terms will permit. *Kinnear Manufacturing Company v. Myers,* 452 S.W.2d 599, 602 (Mo.App.1970). We also recognize that a lien claimant must substantially comply with the statute in order to secure its benefits. *Bremer v. Mohr, supra,* 17.

Appellants make no argument that respondents are not original contractors within the meaning of the statute.[6] They argue that this court's decision in *Nelle Plumbing Company v. Stefanic,* 453 S.W.2d 636 (Mo. App.1970), so broadened the concept of ownership as to include the trustee and *cestui que* trust under a deed of trust. This, appellants argue, entitled them to notice of any lien to be filed on property encumbered by their deed of trust. Appellants argue that this notice would allow appellants to take remedial steps to avoid imposition of the lien.

While this argument may have once been valid, we now have a definitive Supreme Court decision on this precise issue. *R. L. Sweet Lumber Company v. E. L. Lane, Inc.,* 513 S.W.2d 365 (Mo. banc 1974). In fairness to appellants, it must be pointed out that the *Sweet* case was handed down subsequent to the filing of all but one of the briefs in this case. *Sweet* held that subcontractors were *not* required to serve notice of intention to file a lien on the trustee or *cestui que* trust under a deed of trust.

"Appellant's ownership of the deed of trust on the property did not constitute him the owner of the title to the property" and hence, not entitled to the 10 days notice. *Sweet,* at 368. The Supreme Court in *Sweet* also held that "to the extent that the H. B. Deal, Nelle Plumbing and Boyer cases conflict with our holding herein they should no longer be followed." (p. 371).

Thus it is clear that no notice of intention to file a lien is required to be given to a trustee or a *cestui que* trust under a deed of trust. Likewise, since a trustee or a *cestui que* trust is not an "owner" for purposes of deciding who is entitled to notice, the trustee or *cestui que* trust is not required to be named as an "owner" on the lien statement. The fact that some of the respondent contractors gave notice and named the trustee and *cestui que* trust as owners does not mean that the statute required them to do so.

The second issue presented by appellants is whether notice should have been given to the owners of record on the day the liens were filed. Appellants' argument is stronger on this point, since these subsequent owners did not know of the debts owed by *Forward.* The rationale behind the statute requiring notice is as follows: an owner of property who contracts with an original contractor knows whether the original contractor has been paid; thus, the owner does not need notice of the filing of a lien by the original contractor. On the other hand, the property owner is not under contract with a subcontractor and does not know if the subcontractor has been paid; thus, the owner is entitled to ten days notice from the subcontractor before the subcontractor can file a lien. Appellants' argument is that in this case, since they are subsequent owners of the property, they have the same relationship with respondent contractors as an owner has with subcontractors, and should

---

**6.** In fact, another contention by appellants is that certain of the respondents filed their liens beyond the six month time period. The six month period is only allowed to original contractors, seemingly an admission on that issue that respondents are original.

be given ten days notice just as if respondents were subcontractors.

■ As said earlier, respondents have the status of original contractors. As such, they are not required to give notice of their intention to file a lien. § 429.100. The question before us is what effect, if any, the subsequent sale of the property has on the rights and obligations of original contractors. We have not been presented with a case squarely in point by appellants. We do not believe that respondents' status as original contractors should be affected by a subsequent sale of the property.[7] That determination is made on the date the contract is entered. Since the contracts were with the owner, respondents are original contractors. Their status as original contractors is preserved throughout their employment. We hold that the statute does not require notice to be served on subsequent owners of record. Our duty is to construe the statute liberally in favor of the lien claimants.

■ Appellants' third contention on this issue is that certain of the liens are void for failing to include on the lien statement the names of the subsequent owners of record of the property. This requirement stems from § 429.080, regarding the contents of the lien statement. The contractor must file a just and true account of the demand due him "with the name of the owner or contractor, or both, *if known to the person filing the lien.*" (Emphasis added). Appellants' position is that since they were the owners of record on the date of the lien, they should be named on the lien. This argument would be more persuasive if the statute simply said "owner." In that case an argument could be made requiring respondents to check the title of the property between the day they executed the contracts and the day the lien was filed. Such a construction would not, however, give ef-

fect to the qualification "if known to the person filing the lien." This language is a clear legislative mandate that contractors need only name such owners as they have knowledge of and do not have to run a title search. Appellants do not argue that respondents actually had notice of the subsequent change of ownership. Thus, since there has been no showing of actual knowledge by respondents of these subsequent owners, we do not find the lien statement defective for failing to name these unknown owners.

■ Appellants' fourth contention is that certain of the liens were not properly itemized. The requirement for itemization arises from § 429.080. That section requires any contractor who desires to impose a lien on real property to "file with the clerk of the circuit court of the proper county a just and true account of the demand due him or them after all just credits have been given." The statute does not define "just and true account", but we are aided in our pursuit of a definition by the cases construing this section. "The legislative purpose of requiring the filing of the 'just and true account' is so that the land-owners and others interested may learn from the lien statement what the lien claimant asserts he has furnished, thus permitting an investigation to be made to determine whether the materials actually went into the building; whether they were lienable items, and whether the amount charged is proper." *Wadsworth Homes, Inc. v. Woodridge Corporation,* 358 S.W.2d 288, 291 (Mo.App.1962). This legislative purpose is fulfilled in this case, since appellants' brief acknowledges that there is no dispute that the work was done and that the charges were reasonable. The *Wadsworth* case, as noted earlier, also stands for the proposition that we test respondents' status as original contractors at the time the contracts were entered. On this precise

7. Respondents cite us to *Tull v. Fletcher,* 196 Mo.App. 573, 196 S.W. 436 (Mo.App. 1917) and *Reese v. Cibulka,* 68 S.W.2d 902 (Mo.App.1934), which are both in accord with this position. *See also Wadsworth Homes, Inc. v. Woodridge Corp.,* 358 S.W.2d 288 (Mo.App.1962).

issue the court noted that subsequent owners of the property, or those with rights therein, "could plainly see that a new house had been constructed or was in the process of construction on the premises. This was at least general notice that a workmen's lien might be asserted." 358 S.W.2d at 293. The court went on to hold that the original contractor under a lump sum contract with the landowner did not have to itemize his lien account, and could simply state a lump sum.

We have also examined the lien accounts filed as exhibits with this court and find them to all be fair statements of the materials charged to each job. In light of our holding above that these respondents are all original contractors and considering the remedial nature of the statute, we find no error by the trial court in holding these liens to be valid and in compliance with the statute.

We proceed at this point to a discussion of the remaining issues of each appeal.

## I NO. 35505

The remaining issue on this appeal concerns respondent Wentzville Drywall. Appellants contend the trial court erred in declaring a lien in favor of Wentzville for the additional reason that Wentzville's lien was filed on November 1, 1971, more than six months after the indebtedness accrued, and is therefore void under § 429.080. That section states that:

"It shall be the duty of every original contractor within six months, and every journeyman and day laborer within sixty days, and every other person seeking to obtain the benefit of the provisions of sections 429.010 to 429.340 within four months, after the indebtedness shall have accrued, to file with the clerk of the circuit court of the proper county a just and true account of the demand due him."

■ Again, we must look to the case law for a definition of what is meant by "after the indebtedness shall have accrued." We find that phrase to mean when the materials supplied are finally furnished or are finally installed upon the building. *E. R. Darlington Lumber Co. v. James T. Smith Bldg. Co.*, 134 Mo.App. 316, 114 S.W. 77, 78 (Mo.App.1908); *Harry Cooper Supply Co. v. Gillioz*, 107 S.W.2d 798, 802 (Mo.App. 1937).

Here, the testimony by Wentzville was that Wentzville billed the full cost of its services on April 26, 1971, but that often additional work was done after billing. Wentzville also testified that its records indicated that the job was not fully completed until May 27, 1971.

■ On cases involving mechanics' liens tried by the court, we review the case both upon the law and the evidence but due regard is given to the opportunity of the trial court to weigh the credibility of the witnesses and we defer to the court's findings upon controverted matters of fact. *Boyer Lumber, Inc. v. Blair*, 510 S.W.2d 738, 743 (Mo.App.1974). We do not find the trial court's finding that the job was not complete until May 27, 1971 erroneous. The lien was timely filed.

The judgment is affirmed.

## II NO. 35506

■ The remaining issue on this appeal also challenges the lien of Wentzville on the grounds of timeliness. Here, the lien was filed on November 1, 1971. The invoice date for billing purposes was April 9, 1971. There was testimony by Wentzville that the garage of the house was not completed until May 7, 1971, as indicated by the foreman's notation on the job records. Again, based on this testimony, we cannot say that the trial court erred in finding the lien to be timely filed, since November 1, 1971, is less than six months after the date respondent set for the completion of the job.

The judgment is affirmed.

### III NO. 35507

The additional contention of this appeal is that there was no showing by either Meade or Archway that there was any agreement between themselves and the owners of the property to do the work being sued for. Defendants James W. Hofer and Kathleen A. Hofer became owners of the property on May 4, 1971, after construction had begun.

■ Section 429.010 provides that: "Every mechanic or other person, who shall do or perform any work or labor upon, . . any building, . . . under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor, . . . shall have for his work or labor done, . . . a lien upon such building." It is appellants' position that this language requires a contractor to enter into an additional agreement with subsequent purchasers of the property, at least up to the date the job was completed. We believe that our earlier discussion relative to the position of subsequent owners is applicable to this issue also. The rights of mechanics and materialmen are not affected by subsequent transfers of the property. *Wadsworth Homes, Inc. v. Woodridge Corporation, supra.*

■ We do not think that a construction requiring another contract each time the property is sold would be compatible with either the cases discussed previously or the purpose of the statute. As said, appellants were on notice that a building was being completed on the premises. We interpret the statute to require only one contract at the beginning of construction.[8] The liens were not fatal for lack of a contract with subsequent owners. It necessarily follows that the October filing dates of the liens were also within the six month period, since the work was completed in June. The liens were properly declared.

The judgment is affirmed.

8. This position also finds support in *Tull v. Fletcher,* 196 Mo.App. 573 196 S.W. 436

### IV NO. 35508

■ The unresolved issue on this appeal concerns the timeliness of the lien filed by respondent Korn on December 27, 1971. Appellants' position is that Korn finished his work on June 25, 1971, which makes the December 27th filing two days late. Respondent Korn, on the other hand, introduced testimony that the last work was the cleaning of the bricks, and that work was not completed until the week prior to July 20, 1971, which date would make the filing timely. We hold, based on this evidence, that the "indebtedness accrued" in July, 1971, and trial court's finding that the lien was timely filed was not erroneous.

The judgment is affirmed.

### V NO. 35509

There are no unresolved issues remaining. The judgment is affirmed.

### VI NO. 35510

■ In issue on this appeal is the timeliness of Korn's lien. We have again examined the record and find testimony supporting June 20, 1971, as the last day upon which work was done on the premises in question. We cannot say trial court was in error in choosing that date, and accordingly, the lien was timely filed.

The judgment is affirmed.

### VII NO. 35511

■ Appellants contend that the trial court erred in declaring a lien in favor of respondent Korn for the reason that the work was performed under two contracts, only the second of which was timely filed. Appellants argue that the work was completed on June 25, 1971. However, Korn produced testimony that the brick cleaning was not finished until July 20, 1971, which

(Mo.App.1917) and *Reese v. Cibulka,* 68 S.W.2d 902 (Mo.App.1934).

date would make the filing timely. Again, we must defer to trial court's ability to judge the credibility of the witnesses. The court's conclusion that the finish of the brick cleaning was the day the "indebtedness accrued" cannot be said to be erroneous.

The judgment is affirmed.

## VIII NO. 35512

 The only issue presented by this appeal is whether the lien filed by Wentzville was timely.[9] The last day upon which Wentzville could positively establish that they were still working on the house was May 12, 1971, the date of the invoice. The Secretary-Treasurer of Wentzville testified that he returned to the job to finish some sanding and touch up "sometime between two to three weeks later." Three weeks after May 12, 1971, would be June 2, 1971. Wentzville had no record of the exact date, nor could they suggest one. There is nothing else in the record which would allow a finding of a later date. The lien was filed on December 3, 1971. That date is beyond the six month period allowed for the filing of a lien. Accordingly, trial court erred in declaring a lien in favor of respondent Wentzville.

The judgment of the trial court declaring a lien in its favor is reversed.

## IX NO. 35517

No remaining issues are presented. The judgment is affirmed.

## X NO. 35518

This appeal differs from the others in that defendant Forward was not the owner of record at the time the contracts were executed. At issue before the trial court was the identity of the owner and the general contractor for the purposes of the mechanic's lien statutes. The trial court found that:

"4. The defendant R. K. D. Nomen was the record owner of the aforesaid tract of ground and improvements thereon at the time the various mechanic's lien claimants furnished their respective items of labor and/or materials and equipment, but that the defendant R. W. Franklin was the real party in interest with respect to the ownership and development of the Lavinia Gardens Apartment Project.

"5. That the defendants Forward Construction Company, R. W. Franklin and R. K. D. Nomen Company acted interchangeably and as the alter ego of each other in contracting with and ordering the various items of labor, material and equipment from the various claimants of mechanic's lien used in the construction of the Lavinia Gardens Apartment Project."

Appellants argue that these findings are erroneous for the reason that the findings conflict with admissions made by certain of the respondents prior to trial. The trial court was, appellants argue, bound by the admissions made by respondents that R. K. D. Nomen was the owner of the property and Forward was the general contractor.[10]

 We do not believe in this case that the trial court is bound by the admissions by respondents. As said, the issue before the court was the identity of the owner or owners for the purposes of the mechanic's lien statutes. That is a question of law or at the least a conclusion, neither of which is the proper subject for a request for admissions. Rule 59.01, V.A.M.R. Furthermore, the admission as to ownership can be read as an admission as to who was the owner of record, a fact not controverted, and in fact

---

9. Respondent Wentzville did not file a brief.

10. The admissions were made by Meade in response to a request for admissions by respondent N. B. West Contracting Company. The remainder of the admissions resulted

from a failure to answer requests for admissions. In addition, certain denials were filed by leave of court by some respondents after the time for responding had expired.

confirmed by the trial court's findings. The trial court simply found that there were other "owners" for purposes of declaring a mechanic's lien.

Appellants contend that trial court made no finding as to the identity of the general contractor. On the contrary, the trial court found that Meade, Chromalloy, Beach, Wentzville and Watts were all general contractors, presumably based on its finding that ". . . the defendants Forward Construction Company, R. W. Franklin and R. K. D. Nomen Company acted interchangeably and as the alter ego of each other in contracting with and ordering the various items of labor, material and equipment from the various claimants of mechanic's lien used in the construction . . ." We do not believe this finding to be erroneous. As to these claimants, then, they were allowed six months to file their liens and were entitled to use a lump sum in their lien accounts.

As to respondent Wentzville's lien, appellants contend it is fatal because the lien account erroneously included the figure $7,819, instead of $6,839.[11] It has been held that mere inadvertence or mistake, if not accompanied by an intention to defraud, will not invalidate a lien. *Putnam v. Heathman*, 367 S.W.2d 823, 829 (Mo.App. 1963); *Woodling v. Westport Hotel Operating Co.*, 227 Mo.App. 1231, 63 S.W.2d 207 (1933). *See also Hydraulic-Press Brick Co., v. Green*, 177 Mo.App. 308, 164 S.W. 250 (1914) where the lien was allowed in similar circumstances for the amount actually furnished. The lien here in favor of Wentzville was corrected and properly allowed.

As to respondent Beach's lien, appellants contend that the lien is invalid for failure to name the admitted owner and general contractor. This contention fails for the reason the trial court found that R.

W. Franklin, the owner indicated on the Beach lien, to be one of the owners as defined in the mechanic's lien statutes. We agree with the court's finding.

As to the Korn lien appellants contend, in addition to other contentions unnecessary to discuss because of our holding that Korn was an original contractor,[12] that the Korn lien is invalid because of late filing and because Korn did not use the amount of material (specifically bricks) included in the lien. As to the contention of late filing, testimony was adduced that the brick cleaning was not finished before June 21 or 22, 1971. These dates make the October 29, 1971 filing timely. As to the contention that Korn did not use the amount of bricks included in the lien, there is testimony in the record to the contrary. As said, the credibility was for the trial judge. The trial judge did not err in awarding a lien in favor of Korn.

The next lien objected to is the lien of respondent West. Appellants contend that West abandoned its work from April 16, 1971 to August 17, 1971 and thus destroyed any right of West to a running account. Appellants further argue that the time for filing a lien began to run on April 16, 1971. Not so. The record does not support an abandonment by West. While respondent West did not favor this court with a brief, we have examined the record and are satisfied that West was operating under a contract which required West only to perform its services as the building reached various stages of completion. At different times, West would be told what to deliver and where to work. This testimony is sufficient to establish a "running account." A mere lapse of time on a running account does not cause the period of limitations to begin running. *Trout's Investments, Inc. v. Davis*, 482 S.W.2d 510,

11. Wentzville testified that through inadvertence the figure entered for the 14 unit building was the same as the figure used for the 16 unit building. Trial court reduced the figure to $6,839.

12. This is also true for many of the lien claimants and a repetition of the discussion as to those issues would serve no useful purpose.

514 (Mo.App.1972). There was testimony that work was still being done as late as September 2, 1971, which would make the lien timely. Trial court found for West and its finding is not erroneous.

▮ The remaining dispute regarding the lien of Archway concerns the inclusion of a cost for cabinets in the lien account which were installed by a subsequent purchaser of the property. We fail to see the relevance of this fact. Archway testified that it was under contract with Forward to deliver materials to the five buildings in question to Building # 5 and that Roger Conrad, as agent for Forward, had agreed to the price of material to be supplied to the apartments. Archway did not install any of the materials it delivered; who subsequently installed the material should not affect Archway's right to a lien against the property, and it was properly declared.

Lastly, appellants attack the Chromalloy lien. Their first contention in this regard is that the lien was not timely. They base this assertion upon the testimony of Chromalloy's witness that the work was finished on April 20, 1971. Chromalloy also introduced testimony that Chromalloy was under contract with Forward to furnish various materials to this jobsite, that they made such deliveries up to and including August 19, 1971, that at the time of the lien account it was Chromalloy's belief that all of the materials had been installed in the buildings and that the lien account has been corrected by $2,140.32 for materials not actually used in the building.

▮ Part of the dispute goes to whether the testimony of Chromalloy's witness is credible; we repeat that we defer to the trial court's ability to judge the credibility of witnesses. Appellants further contend that certain repairs and extras were part of a new and separate account and cannot be used to date the completion of the work. Appellants cite no case in support of their position that two contracts were in fact created. Chromalloy, on the other hand, argues that it had a "running account" as defined by the case of *Badger Lumber Co., v. W. F. Lyons Ice and Power Co.*, 174 Mo.App. 414, 160 S.W. 49 (1913). A running account is a mutual account between buyer and seller, to which charges and credits are made as materials are sold or paid for. Unless there is evidence to show a separate and distinct contract as to the last items, the account will be considered a running account and relates back to the original contract. *Trout's Investments, Inc. v. Davis*, 482 S.W.2d 510, 514 (Mo.App.1972). Once a running account is established, the mere lapse of time between the items "is not sufficient to commence the running of the mechanic's lien periods of limitation. Nor is it significant that the last item or labor may be a small item." *Trout's Investments, Inc. v. Davis, supra.* Chromalloy demonstrated to the trial court's satisfaction, and to ours, that it was operating under a running account. As such, the additional services rendered in August, 1971, were part of the original contract and accordingly, the lien was timely filed.

▮ Next is appellants' charge that Chromalloy wrongfully included materials in the lien that were sold to a subsequent owner. A credit has been made of this item to the lien account. Chromalloy successfully showed that this was a good faith mistake, based on facts which it assumed to be true at the time the lien was filed. Upon later learning the true facts, Chromalloy made the appropriate adjustments. Under the holdings of the cases discussed on this issue earlier, the lien will not fail due to a good faith inclusion of a charge which later is proved to have been excessive.

Appellants' remaining attack upon this lien is that it includes wall-to-wall carpeting, a non-lienable item. Appellants' position is that wall-to-wall carpeting is not affixed to the property in the traditional sense. Neither party has been able to furnish us with any cases directly concerning wall-to-wall carpets but our independent research has produced cases supporting both

views. The Oklahoma courts have held wall-to-wall carpeting lienable because it is glued or nailed to the subfloor and it in fact becomes the finished floor.[13] Florida courts have denied liens on such carpeting, looking to their statute which requires a lienable item to be an "improvement" to the land.[14] We believe our statute provides a less strict view of what constitutes a lienable item.

█ Our statute is § 429.010 and it provides that "every mechanic or other person, who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land, . . shall have . . . a lien upon such building, erection or improvements." This language, to our mind, would include wall-to-wall carpeting in a new building, since we assume the carpeting was affixed directly to the subfloor and served as a finished floor. The removal of such carpeting involves much work and renders the flooring unsuitable for use thereafter. Accordingly, the lien was properly declared.

The judgment is affirmed.

## XI NO. 35458

The only issue presented by this appeal is whether Respondent Beach was required to enter into a second agreement with subsequent owners of the property. For the reasons stated in case III., No. 35,507, respondent is not required to establish agreements with every subsequent owner of record. The lien was properly declared.

The judgment is affirmed.

CONCLUSION:

Judgment affirmed as to all respondents except Wentzville Drywall in appeal # 35,-512, which is reversed as to that lien.

WEIER, CLEMENS and RENDLEN, JJ., concur.

13. *Southwest Title & Trust Co. v. Norman Lumber Co.,* Okl., 441 P.2d 430 (1968); *United Benefit Life Insurance Co. v. Norman Lumber Co.,* Okl., 484 P.2d 527 (1971).

14. *Fell v. Messeroff,* Fla.App., 145 So.2d 238 (1962).