# APPENDIX.*

KIMBALL and another vs. DARLING, imp., etc.

(1, 2) *Contract. Strict foreclosure.* (3, 8, 10–13) *Injunction.* (4–7, 9)
*Pleading.*

1. Contract under seal, by which T. W. M. & Co. agreed to pay certain sums as purchase money of land belonging to plaintiffs, and to repay certain moneys which were to be advanced to them by plaintiffs as a loan on condition that they (T. W. M. & Co.) should put certain buildings and machinery upon said land, free from other liens, and which should be liable for the whole debt; and T. W. M. & Co. further agreed to hold the premises as tenants of the plaintiffs ; and plaintiffs covenanted, on full payment of said moneys, to convey the premises to T. W. M & Co. *Held,* that on default in the payment of the moneys so secured, plaintiffs were entitled to a strict foreclosure of defendants' rights under said contract.

2. *It seems* that plaintiffs would not be entitled to a sale of the premises on foreclosure, with a personal judgment against T. W. M. & Co. for any deficiency.

3. In such action to foreclose, if machinery which had been put upon the premises so as to become a part of the freehold has been removed therefrom, so as to render plaintiffs' security inadequate, they are entitled to restrain all persons whose claims or liens are subordinate to their own, from selling or intermeddling with such machinery.

4. On a motion (based upon the pleadings) to dissolve such an injunctional order, an averment in the complaint that defendants erected upon the premises a manufacturing establishment, " and put therein machinery which became part and parcel thereof," and that " among other machinery which they put therein was a steam engine and boiler," etc., *held,* a sufficient averment that said engine and boiler had become a part of the realty.

5. If defendants desired a more special averment of the manner in which such engine and boiler were affixed to the land, they should have moved to have the complaint made more definite and certain in that respect.

---

*The cases contained in this appendix were decided *prior* to the January term, 1873, but have never been reported.

Kimball and another vs. Darling, imp., etc.

6. D., having been made a defendant as a member of the firm of T. W. M. & Co., alleged in his answer that plaintiffs advanced the moneys mentioned in the complaint, at about the time therein stated, to T. W. M. and F. M., "who then and there, and at all times mentioned in the complaint, constituted the firm of T. W. M. & Co.," and not to him, said defendant; and he then "denied each and every allegation of said complaint as far as this debt is concerned or connected with the allegations therein, that is to say" certain specified folios of said complaint. *Held,* that this will not be construed as a denial of the above recited allegations concerning said engine, boiler, etc., although they are contained in one of the folios so specified.

7. A further denial of "each and every allegation of said complaint inconsistent with this answer," *held* to deny only those allegations of the complaint with respect to which a specific answer had already been made, and so far only as they were inconsistent with such specific answer.

8. The answer, thus construed, denying only D.'s personal liability upon the aforesaid contract, it was error to dissolve, upon the pleadings, the injunctional order above described, as against D. and those claiming under him.

9. A demand in the complaint of equitable relief to which they were not entitled, will not prevent plaintiffs from having a judgment for the relief to which the facts alleged would entitle them.

10. It may be that plaintiffs could recover in an action at law any damages caused by the wrongful removal of the machinery in question, their relation to the premises being analogous to that of mortgagees. *Jones v. Costigan,* 12 Wis., 677.

11. But equity, having taken jurisdiction of this cause to subject the property to the payment of the debt, will, if necessary or beneficial to the creditor, proceed by injunction to prevent a sale or other disposition of that portion of the property which has been severed from the remainder.

12. Whether defendant D., on his appeal from an order denying his motion (based upon the pleadings) for a dissolution of the injunction, can have the benefit of denials contained in the answer of the other defendants, *quære.*

13. An allegation in the answer of M. and M. (claiming to be the firm of T. W. M. & Co.), that certain words had been inserted in said contract, subsequent to its execution, without their consent, to the effect that the buildings and machinery put upon the premises should be "liable for the whole debt and not be removed," *held* not to furnish — unaided by proof of the alleged alterations — sufficient grounds for dissolving the injunction.

APPEAL from the Circuit Court for *Outagamie* County.

This action was brought by *David Kimball* and *Reeder Smith* against *Theodore W. Morse, Lorenzo E. Darling, A. Morse, E. C. Foster, George Putney, Francis H. Moon, Adelbert Babcock, Herschel S. Babcock, W. Whorton* and *J. Whorton.* The complaint avers that on the 17th of July, 1869, the plaintiffs and the two defendants first named entered into a contract, which is set out in *hæc verba,* and is in substance as follows:

1. The agreement purports to be between the plaintiffs as parties of the first part and T. W. Morse & Co., of Appleton, Wis., as parties of the second part. 2. The parties of the second part agree to pay said *Kimball* and *Smith,* their heirs or assigns $2,200, viz: $400 upon the execution and delivery of the contract (receipt of which is acknowledged); and the remainder in installments of $450 each in one, two, three and four years, with interest at ten per cent., payable semi-annually; such payments, when fully completed, being intended to apply as the purchase money of a certain piece of land two hundred feet square, in said city of Appleton (which land is fully described in the contract), and also as repayment of a loan of $1,000 to be advanced by said *Kimball* and *Smith* as follows: "$500 on the 15th day of August next, and $500 on the 15th day of September next, with interest at ten per cent. from this date, and this amount is to be loaned as above on condition the parties of the second part shall have buildings, machinery and building materials on the ground, exempt from all other liens, equal to this amount, and upon which there shall be an insurance for the security of this amount equal to the amount loaned and the interest thereon, [which property shall be liable for the whole debt, and not be removed.]" There are further covenants to pay taxes, to keep the premises in good condition, and also to hold the premises as tenants on sufferance of the parties of the first part, subject to be removed as tenants holding over, upon any default. 3. The parties of the first part covenant for themselves, their heirs, etc., upon full payment of

said sum of $2,200, to execute and deliver to said T. W. Morse
& Co., on demand, a good and sufficient deed in fee simple of
the premises described.   4. There is a further clause providing
that in case of any default in payment by the parties of the
second part, the agreement shall be void, and all payments
thereon forfeited, subject only to be revived by the act of the
parties of the first part, or the mutual agreement of the parties.
5. By a supplementary agreement of the same date, written on
the back of said contract, the parties of the second part " agree
to effect and maintain insurance, as soon as they have erected
one or more buildings, which shall be equal to the amount
that is to become due upon the within contract;   *   *   [and
all property upon the premises after the date of the insurance,
shall be liable for the whole debt or any part thereof.]"

    The complaint then alleges that the defendants *Darling* and
*T. W. Morse* executed and delivered to the plaintiff, as agreed
in said contract, four promissory notes for $450 each, at one, two,
three and four years respectively, with interest at ten per cent.
per annum, payable semi-annually, which notes were payable
to *David Kimball* or bearer; that plaintiffs are now the owners
and holders thereof ; that said two defendants executed said
contract and notes under the style of T. W. Morse & Co.,
" they, the said defendants, then and there informing the plaint-
iff *Reeder Smith*, who was acting for the plaintiffs, that the
said T. W. Morse & Co. meant them." It is further alleged
that said defendants, *Darling* and *T. W. Morse*, when they en-
tered into said agreement, informed said *Reeder Smith* that they
were purchasing said land for the purpose of erecting a manu-
facturing establishment thereon and operating the same; that
the $400 which was acknowledged received on said contract
was never paid, but was given by plaintiffs to said two defend-
ants as a bonus in consideration of their erecting a manufac-
turing establishment on said premises, to wit, a cab factory ;
that the money agreed to be loaned as aforesaid was for pur-
chase money to put machinery in such manufacturing establish-

ment ; and that it was then and there expressly agreed and understood that in consideration of the premises said two defendants were to erect a manufacturing establishment on the land and operate the same, and plaintiffs were to have a lien on said manufacturing establishment, including all machinery, for such claim and indebtedness.

It is then alleged that plaintiffs fulfilled all the conditions of the contract on their part, and loaned and advanced the $1,000 as agreed ; but that said two defendants and their legal representatives have made default in failing to pay the note for $450 which fell due July 20, 1870, and certain interest and taxes, and there is due on said contract $450, with interest thereon to date, and interest on $1,800 for one year. It is then averred that soon after they entered into said agreement, the defendants *Darling* and *T. W. Morse* erected upon said premises a cab manufacturing establishment, " and put therein machinery which became part and parcel thereof, and proceeded to operate the same, and, among other machinery which they put therein for the purpose aforesaid, was a steam engine and boiler and planing machine or planer;" that about two months before the commencement of this action said defendants " took out of said manufacturing estalishment, and removed from said premises, said steam engine and boiler and planing machine, under pretext of having them repaired ; and that the same have never been returned thereto, but are now lying in the second ward of the city of Appleton," etc. It is then alleged that on or about the 18th of July, 1870, said *Darling*, as assignee of one Spaulding and one Dane, recovered judgment in justice's court in said city of Appleton, against said *T. W. Morse* and *F. H. Moon*, for $261.89, and have levied on said engine, boiler and machinery, and advertised them for sale on the 28th of July, 1870 ; that plaintiffs believe they intend to remove the same beyond the jurisdiction of this court, and that said sale is for the benefit of said *Darling* ; and that defendant *Foster*, as marshal of the city of Appleton, holds said execution, etc. It is

further averred that *Geo. W. Putney* has commenced a suit in said circuit court against *T. W. Morse* on a claim against said *Morse* for about $1,500, and has in such action attached said engine, boiler and machinery, subject to said judgment in favor of *Darling,* and means to enforce his claim against said property.    It is then alleged, on information and belief, that *Darling* is the real party in interest in said *Putney* suit, and the same was commenced for his benefit ; and that *Darling* and *T. W. Morse* are conniving and conspiring to have said engine, boiler and machinery sold upon said claims, and removed beyond the jurisdiction of the court and beyond the reach of plaintiffs' lien ; and that *Darling* has another judgment against *T. W. Morse,* as assignee of Spaulding and Dane, for about $60.    It is then alleged that by the removal of said engine, boiler and machinery from the premises, plaintiffs' security is greatly impaired, and that if the same shall be removed beyond the reach of the plaintiffs the balance of said property will not be sufficient security for their claim on said property.    There are further allegations as to the other defendants, showing that they claim some interest in the property, which is subsequent and subject to plaintiffs' lien.    The relief demanded is, that a receiver be appointed by the court to receive and take charge of said engine, boiler and machinery, and that an injunctional order be granted restraining defendants from selling, disposing of, removing or in anywise intermeddling with said engine, boiler and machinery, or any part thereof, until the further order of the court, etc. ; and that judgment be rendered for a foreclosure against all the defendants, and that the premises above described and said engine, boiler and machinery, be sold to make the amount of plaintiffs' lien, and that *Darling* and *T. W. Morse* be adjudged to pay any deficiency ; and for general relief.

An injunctional order in accordance with the prayer of the complaint was granted by a court commissioner.

*T. W. Morse, F. H. Moon* and *A. Morse* answered jointly, alleging that at the times mentioned in the complaint *T. W.*

*Morse* and *F. H. Moon* were copartners under the name of T. W. Morse & Co. ; that none of the other defendants, and no other person, was a member of such firm ; that said *T. W. Morse* and *F. H. Moon* executed the contract set forth in the complaint, except that the words above enclosed in brackets were not in the contract, but were inserted by *Reeder Smith* long after the execution and delivery thereof, and without the consent of said *T. W. Morse* and *F. H. Moon.* The answer then denies " each and every allegation " of the complaint " as to the making of the defendant *Darling* a member of the firm of T. W. Morse & Co., or either of the defendants, or as to the making of him a party to said contract, or to any transaction as a member of said firm ; " and it also denies " each and every allegation of the complaint inconsistent with " said answer.

*Darling* answered separately, denying that on the 17th of July, 1869, or at any other time, he entered into or executed the contract set forth in the complaint, or any other contract with the plaintiffs, or that he with *T. W. Morse* executed or delivered to the plaintiffs, or to any other person, " any promissory note referred to in said contract or otherwise, for $450, or for any other sum." He further denies that he was ever a partner with *T. W. Morse* or any of the other defendants, or was a member of the firm of T. W. Morse & Co., or informed *Reeder Smith* or any other person that he was a member of that firm, or of any firm with either of the other defendants. He alleges that about the time mentioned in the complaint, *Smith* loaned and advanced the sum in said complaint mentioned, to *T. W. Morse* and *F. H. Moon* (who then and at all other times named in the complaint constituted the firm of T. W. Morse & Co.), and not to him, said *Darling.* He then " denies each and every allegation of said complaint as far as this debt is concerned or connected with the allegations therein, that is to say, folios 16, 17, 18, 19, 20, 21, 22 and 23 ; " the substance of which folios is stated above in the third paragraph. He then admits that in consideration of $260.89, by him paid to Spald-

ing and Dane, they assigned to him their judgment for that sum against *Morse* and *Moon* in an action commenced by an attachment against the engine, boiler and machinery mentioned in the complaint; but he denies that it was his intention to re- move said property beyond the jurisdiction of the court. He admits that *Putney* has commenced the suit against *Morse* and *Moon* described in the complaint, but denies that he (*Darling*) is interested in said suit, or that it is carried on for his benefit. He denies that he is conniving or conspiring with *T. W. Morse*, or with any one, to have said engine, etc., sold on said execu- tion or claim, "or to have the same, except to the extent of said judgment," as he claims a right to do. He denies further that plaintiffs have a lien upon said engine, boiler or machinery, or any part thereof, and alleges that plaintiffs' lien is on the build- ings and premises described in the complaint, and that such buildings and premises far exceed in value the amount of such lien, and are ample security for the indebtedness of *T. W. Morse* and *F. H. Moon* to them; "and save as above," he de- nies "each and every allegation of the complaint in any way inconsistent with this, his answer."

Upon these pleadings the defendants *T. W. Morse*, *F. H. Moon* and *Darling* moved the court to vacate the injunctional order, "or to modify the same." From an order denying this motion, *Darling* appealed.

*Hudd & Wigman*, for appellants, argued, 1. That the injunc- tion should have been dissolved because the material allega- tions of the complaint, upon which it was granted, were upon information and belief, and the injunction was granted without notice (19 Wis., 677); and because the answer denies all the material equities of the complaint (17 Wis., 30; 19 id., 468; 22 How. Pr. R., 426; 36 id., 233; 4 Abb. Pr. R., N. S., 442); and that this was a right which *Darling* had alone, under his answer. 9 Abb., N. S., 37. 2. That to authorize the granting of such an injunctional order on the complaint, the latter must contain a demand for such an injunction as a part of the relief

Kimball and another vs. Darling, imp., etc.

sought (R. S., ch. 129, sec. 2; 4 How. Pr. R., 31, 481), and must state facts showing plaintiff entitled to final relief as prayed. 6 How. Pr. R., 86; 7 id., 17; 8 id., 463; 3 Abb. Pr. R., 182; 10 id., 329; 32 Barb., 88. 3. That as a general rule the courts of equity will not restrain by injunction the commission of an ordinary tort or trespass (28 How. Pr. R., 382; 44 Barb., 183), but the trespass must be such as cannot be compensated by damages, or must be irreparable. 3 Code R., 143; 10 Ind., 117; 7 Ga., 49; 5 Cal., 49; 11 Abb. Pr. R., 220; 19 How. Pr. R., 395; 30 Barb., 549. 4. That if the engine, boiler, etc., were ever a part of the realty (as to which there is no sufficient averment in the complaint), yet, when severed from the realty, it became personal property, and was subject to seizure upon attachment or execution, and there was no trespass even in such seizure; that this being an action to foreclose a land contract, the judgment can only reach the real estate; and that so far as the contract undertook to give a lien upon machinery to be afterward acquired, as security for a loan of money, it was void as to creditors. 20 Wis., 398; 11 id., 207; 10 id., 397. 5. That the relief demanded cannot be granted, but only a strict foreclosure. 5 Wis., 598.

*Gabe Bouck*, for respondents, insisted that the answers do not deny any material averment of the complaint upon which the injunction was based, and are not sufficient to require a dissolution of the injunction (*Roberts v. Anderson*, 2 Johns. Ch., 204; *Storer v. Coe*, 2 Bosw., 661; *Moore v. Hilton*, 1 Dev. Eq., 435); that when the allegations of the complaint are denied, it is still within the discretion of the court whether the injunction shall be dissolved (*Cooper v. Tappan*, 9 Wis., 361; *Bk. of Monroe v. Schermerhorn*, 1 Clark, 305; *Roberts v. Anderson*, 2 Johns. Ch., 205); and that if the motion to dissolve is based upon the answer, *all* the defendants must answer. *Depeyster v. Graves*, 2 Johns. Ch., 148; *Jones v. Magill*, 1 Bland, 190; 1 Till. & Sh. Pr., 721.

The cause was decided, and the following opinion filed, at the June term, 1871.

DIXON, C. J.   It is said the complaint contains no sufficient averment that the steam engine and boiler and planing machine in question were ever put up and used, and so attached to the freehold as to become a part of the realty.   The averment is in these words:  "That soon after they entered into said agreement, the defendants last aforesaid erected upon said premises a cab manufacturing establishment, and put therein machinery which became part and parcel thereof, and proceeded to operate the same, and among other machinery which they put therein for the purpose aforesaid, was a steam engine and boiler and planing machine and planer."   The particular manner in which the machinery was annexed or connected is not stated, but this is a good averment that it became part and parcel of the land or premises described in the complaint and in the executory contract set out therein, by which the plaintiffs agreed to sell the same premises to the defendants, and for the foreclosure of which contract this action is brought.   It is a sufficient averment on general demurrer, or on this motion to dissolve the injunction.   If the defendants desired a more specific statement of facts before answering, their remedy was by motion to make the complaint more definite and certain.

It thus appearing from the complaint that the machinery became part of the real estate, so that the title or a lien vested in the plaintiffs as the owners, or for their security for the purchase money and other moneys advanced by them to the defendants under the contract, the next point of inquiry is as to the answer of the appellant, whether he has denied these facts, or otherwise met and overcome the equity of the complaint. He admits the making of the contract of sale and the advance or loan of money by the plaintiffs as stated in the complaint, but denies that he was one of the parties to the contract, and avers that it was the defendants *Theo. W. Morse* and *Francis*

*Moon*, and not *Theo. W. Morse* and himself, who composed the firm of T. W. Morse & Co., the purchasers. He does not aver that any payments have been made to the plaintiffs, or that all is not due to them as alleged in the complaint. He does not, as we understand his answer, deny or profess to, that the steam engine and boiler and planing machine became part of the realty before their removal under the circumstances stated in the complaint. The only part of his answer which can be considered as in any way relating to this subject is as follows: "The defendant, further answering said complaint, says that on or about the time mentioned in plaintiffs' complaint, the plaintiff *Reeder Smith* loaned and advanced to *Theo. W. Morse* and *Francis Moon*, who then and there and at all other times mentioned in plaintiffs' complaint, constituted the firm of T. W. Morse & Co., the sum mentioned in said complaint, and not to this defendant. The defendant denies each and every allegation of said complaint *as far as this debt is concerned or connected with the allegations therein*, that is to say, folios 16, 17, 18, 19, 20, 21, 22, 23." It is true, the averment as to the different articles of machinery having become fixtures is found in folio 23, but this language cannot be considered as a denial of that averment. If it was so intended, then the pleader has expressed himself too ambiguously to enable this court so to construe it. It is likewise true that the answer contains a further denial in these words: "The defendant denies each and every allegation of said complaint in any way inconsistent with this, his answer." The effect of this last clearly is only to deny those allegations of the complaint with respect to which specific answer has already been made, and so far only as they may be inconsistent with the answer. It is a form of denial adopted apparently to confirm and make more certain the specific defenses contained in the answer, and serves no other purpose. It does not operate as a denial of anything beyond those defenses, and all other allegations of the complaint stand admitted for want of answer.

It is obvious from this view of the pleadings, that the injunctional order ought not to be vacated. It is immaterial to the rights or equities of the plaintiffs in this particular, whether the appellant or *Moon* was the true party to the contract with *Morse*, under the name or style of T. W. Morse & Co. That issue can be determined hereafter, when the proofs come in, should it otherwise become material in this action. The plaintiffs demand judgment of foreclosure and sale, and also judgment for any deficiency, etc. It may be doubtful, under the decision in *Button v Schroyer*, 5 Wis., 598, whether they are entitled to this relief; but if not, their demand in this respect will be rejected, and they will be entitled to judgment of strict foreclosure upon establishing the facts charged in the complaint.· As the answer of the appellant fails to controvert any of the material facts alleged in the complaint, save only as to his personal liability upon the contract and the notes, if that be material, it follows that the order appealed from was correct. The injunction should not be dissolved as upon complaint and answer.

We notice the remarks of counsel for the appellant, that this is not a proper case for an injunction — that it is to restrain the commission of a mere trespass, or to restore the property taken after the trespass has been committed, where an action at law is the proper remedy. It·may be that an action on the case would lie in favor of the plaintiffs to recover the damages sustained by them in consequence of the removal of the machinery. *Jones v. Costigan*, 12 Wis., 677, would seem to be authority for this. That was an action by a mortgagee to recover damages for injuries caused by·the wrongful and fraudulent removal of the doors and windows from the dwelling house situated on the mortgaged premises, whereby the security was diminished and the mortgagee suffered loss. The situation of the plaintiffs with respect to the premises and property in controversy is quite analogous to that of mortgagees, and their rights should be the same, or certainly no less. But the case of *Jones v*

*Costigan* clearly recognizes the right of the mortgagee to the remedy by injunction whenever that remedy will be in any way beneficial. Equity, having jurisdiction to subject the property to the payment of the debt and to protect and enforce the mortgage creditor, will do so by any process within its power. It will, if necessary for this purpose, lay hold of the property after it has been severed or removed, and restrain or prevent the sale or other disposition of it. The position of the plaintiffs, and their relations to the property under the contract, being in substance the same as if they were mortgagees, equity will grant the same relief in their favor. This it will do in virtue of their right or title to the property which still remains, notwithstanding its severance and removal.

It seems to be supposed that the appellant may have the benefit of the statements and denials in the answer of his co-defendants *Morse* and *Moon* (who do not appeal), for the purpose of obtaining a dissolution of the injunction. If this be so, it does not vary the case, as their answer, unaided by any proof of the alleged alterations of the contract, furnishes no sufficient ground for a dissolution.

*By the Court.* — Order affirmed.