SMITH LONG AND PAUL WALTERS, APPELLANTS, v. RICHARD A. KISSEE AND MYRTLE C. KISSEE, DEFENDANTS; CENTRAL STATES SAVINGS & LOAN ASSOCIATION, RESPONDENTS; C. W. DIMOND ET AL., DEFENDANTS.*

Springfield Court of Appeals. Opinion filed February 17, 1930.

*Corpus Juris-Cyc References: Mortgages, 41CJ, section 440, p. 506, n. 88.

*Gertrude M. Williams* and *Thos. W. Martin* (of counsel), for appellants.

*Lincoln & Lincoln* for respondent.

BAILEY, J.—This is a statutory action to enforce a mechanic's lien for materials furnished by plaintiff to defendants, Richard A. Kissee and Myrtle C. Kissee, and used in the erection of a dwelling house upon certain lots owned by said defendants. The controversy here is between plaintiff and certain deeds of trust lienholders. The trial court, after hearing the evidence, gave defendant Loan Company's declaration of law in the nature of a demurrer to the evidence, and rendered judgment subjecting plaintiff's mechanic's lien to that of the liens of the deeds of trust. Plaintiff has appealed.

The facts show the deeds of trust were executed, delivered and recorded long prior to the date when the material was furnished by plaintiff to build the house in question.

Plaintiff's statement of the facts is clear, and is as follows:

"The evidence showed that on and prior to the 1st day of November, 1927, defendants, Kissee, were the owners of the lots and the encumbrances of the other defendants duly of record. That there was on said lots an old house, a two-story structure 26x36; that prior to said date defendants, Kissee, had contracted with one Newland, a carpenter, for the tearing down of this house and the building of a new house on the same premises; that said Newland was to receive, as compensation for tearing down the old house and building the new one, one-half of the lumber in the old house; that he began tearing down the old house on November 1, 1927; that as he tore it down, he separated the lumber into two piles, one-half in each pile; that he had entirely finished tearing it down before any material had been furnished by plaintiff; that he built a six-room house on the same premises, but not on the same spot, nor on the same foundation as the old house; that he built the house on an entirely new foundation and in front of the site of the old house; that in the new house he used about eighty per cent of one-half of the lumber obtained from tearing down the old house—about forty per cent of the old material; that the rest of the material used in the building was furnished by plaintiff; that all the floors were of new material, except one little porch floor; that all of the studding was new except the main partition that ran through near the center; that the roof was of new material; that he used old windows and one new front door.

"The evidence further showed that one Leland I. Selvey was agent for respondent at Lamar. That on October 27, 1927, he first had an intimation that Kissee might tear down his home and build another there; that on that same day he wrote a letter about it to the respondent. That on November 3, 1927, he learned that defendant, Kissee, was tearing down the building; that it had all been torn down except the walls and frames; that on the latter date he wrote another letter to respondent about it; that on November 16th, respondent wrote in answer to Selvey's letter, demanding that Kissee execute a bond and return to respondent, together with plans and specifications of the new building proposed to be constructed on these lots; that a bond to guarantee the replacement of the building was furnished as required, and approved, receipt of which was acknowledged by respondent in a letter to said Selvey dated November 19, 1927. That prior to the date that plaintiffs let Kissee have the material, said Selvey had a conversation with Paul Walters (one of plaintiffs), with reference to respondent's increasing the loan on this property; that he showed Walters one of these letters (Exhibits 'A' and 'B'), but he didn't know which one. That he told Walters he (Selvey) had no authority to make or increase loans for respondent. That after the building was enclosed, and while the interior was still unfinished, respondent

sent an inspector to examine the premises for an increase in the loan, which increase was refused."

The bond was never offered in evidence. The extent of Selvey's authority as agent is not shown. Moreover, there is no evidence tending to prove that the Central States Savings & Loan Association, hereinafter called the loan company, through its agent, or otherwise, at any time consented to the tearing down of the building. The question then is, whether or not the beneficiary in a deed of trust, after a dwelling on the encumbered land has been torn down, without the consent of such beneficiary, and converted into lumber, and an appreciable portion of such lumber used in the erection of a new dwelling house on the same land covered by said deed of trust, has a superior lien against the new dwelling house to that of the materialman whose material was used in the erection of such new dwelling house.

This question becomes easy of solution if we assume, as respondent has in its brief, that the lien of the deeds of trust continued against the lumber after the house was destroyed from which the lumber came. If this lumber, no longer in the original building, was impressed with the lien of the deed of trust, then the laws as laid down in the case of Schulenburg v. Hayden, 146 Mo. 583 (cited by both plaintiff and defendant), clearly applies, and the deed of trust is a superior lien to that of the materialman. Referring to the Schulenburg case, a building was partially destroyed by fire and reconstructed. In a controversy between a mechanic's lien claimant and the beneficiary in a deed of trust our Supreme Court held that:

"Section 6711, of course, gives the mechanic's lien a priority over subsequent mortgages. But where the mortgage covers the land and the house, and the house is partially destroyed by fire, and the contractor reconstructs it under a contract with the owner of the equity of redemption, section 6707, does not authorize the mechanic's lien to take priority over the mortgage or the sale of the reconstructed house and its removal. It may be that the reconstruction of the house would increase the security of the mortgagee, but he is not bound to rebuild the house—he may be content with his security of the land and the ruins of the house—which may be worth, as in this case, two-fifths of his mortgage. He has no power to prevent the owner of the equity of redemption from contracting with any person to reconstruct the house upon the faith of the credit of such owner, because he is not even entitled to foreclose his mortgage until condition broken, and is not entitled to exercise acts of dominion over the property (except to prevent waste) until he acquires title at the foreclosure sale. On the other hand, the contractor can protect himself by not taking the risk, without the express consent of the mortgagee."

There can be no question that the foregoing rule of law is well established in this State. But we have found no case in which that

rule has been applied where the building was totally destroyed, as here. Another case, relied upon by both parties to this suit, was one in which a house encumbered by a mortgage was totally destroyed by fire and a new house erected on the old foundation which was intact. In considering the rights of a mechanic's lien claimant, the Supreme Court said, ''Although the encumbrances were upon the old house as well as upon the land, after the house burned the holders of the encumbrance had for their security only the land and the foundation. The agreed statement of facts recites that the ''frame part of the building was entirely destroyed.' Under such circumstances, to give plaintiffs a prior lien over the encumbrances will not impair the security which the holders had before the new dwelling was constructed, as the latter can be removed from the foundation and the premises left in the same situation as they were before it was created.'' Jones Lumber Co. v. Snyder, 221 Mo. App. 1227, l. c. 1231, 300 S. W. 850.

In the case at bar the old house was torn down, the lumber stacked on the encumbered land and afterwards about forty per cent of it used in erecting a new house upon a new foundation. If the lien of respondent's deed of trust continued against the old lumber that went into the new structure, it would obviously be impossible to separate the old from the new lumber or materials used in the erection of the new house and the rule set forth in the Schulenburg case (supra), must govern. It is our opinion the lien of the loan company was, under the particular circumstances, impressed upon the lumber obtained from tearing down the house covered by its deed of trust. It is true that in Missouri a mortgage or deed of trust is regarded as a mere security for debt and not as a common-law conveyance of title. [Missouri Real Estate & Loan Co. v. Gibson, 282 Mo. 75, 220 S. W. 675; Grafeman Dairy Co. v. Club, 241 S. W. 923.]

This is sometimes called the American Doctrine under which the mortgagor has the right to deal with the mortgaged premises as owner so long as he is permitted to remain in possession, but any person taking under him takes subject to the rights of the mortgagee, unless there has been a severance, as of crops. If the lumber in this case had been removed from the premises and sold to a third person, we should have no difficulty in holding the lien of defendant loan company on the lumber itself was lost insofar, at least, as between defendant and plaintiff. But, on the contrary, the lumber was piled on the land covered by the deed of trust and was never out of the owner's possession. Those cases which hold the mortgagee's lien to have been destroyed by severance from the land of a building covered by the mortgage, are invariably cases in which the building or lumber has been sold and removed to other land. Harris v. Bannon, 78 Ky. 568; Cooper v. Davis, 15 Conn. 556; Buckout v. Swift, 27 Cal. 433; Kimball v. Darling, 32 Wis. 684; Gooding v. Shea, 103 Mass. 360; 41 C. J., pp. 506-7, art. 440; 7 L. R. A., p. 279, note.

Since the house was torn down without the consent of the mortgagee or loan company, we believe the lien was retained on the lumber in the hands of the owner or mortgagor, at least so long as it remained on the premises. The new building could not be removed and yet leave the mortgagee with the same security it had before. It is entitled to all that security and the mere fact, as suggested in plaintiff's brief, that the loan company may have taken other security in the form of a bond for the restoring of the premises, does not alter the situation. While that point is mentioned, no authorities are submitted in support of any such theory to defeat recovery. The judgment should be affirmed. It is so ordered. *Cox, P. J.*, and *Smith, J.*, concur.