**TROUT'S INVESTMENTS, INC., d/b/a Boonville Lumber Co., Plaintiff-Respondent,**

v.

**R. Stuart DAVIS, Jr., et al., Defendants-Appellants.**

**Don E. WINNINGHAM, Sr., Plaintiff-Respondent,**

v.

**R. Stuart DAVIS, Jr., et al., Defendants-Appellants.**

**Fred OERLY and Frank P. Zoeller, Plaintiffs-Respondents,**

v.

**R. Stuart DAVIS, Jr., et al., Defendants-Appellants.**

**Eugene H. GERHARDT, Plaintiff-Respondent,**

v.

**R. Stuart DAVIS, Jr., et al., Defendants-Appellants.**

**No. 25764.**

Missouri Court of Appeals, Kansas City District.

June 5, 1972.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 6, 1972.

Conway & Blanck, James E. Conway, and Richard J. Blanck, Boonville, for appellants National Bank of Boonville and Richard J. Blanck, as Trustee.

Dale Reesman, of Williams, Reesman & Tate, Boonville, for respondents Trout's Investments, Inc., Don E. Winningham, Sr. and Fred Oerly and Frank P. Zoeller.

Hampton Tisdale, Boonville, for respondent Eugene H. Gerhardt.

PER CURIAM.

This is an appeal from a judgment of the Circuit Court of Cooper County, Missouri in four separate lawsuits filed in that court wherein the plaintiffs seek to assert mechanic's liens for work and material on residential property and to have the court declare such liens superior and prior to a first mortgage deed of trust. The cases were consolidated for trial, jury waived, and submitted to the court as the trier of facts. The court entered a judgment finding in favor of the lienors in various amounts, rendering a money judgment against the defendants and decreeing that such mechanic's liens were superior and prior to the encumbrance of the deed of trust held by the defendant Richard J. Blanck, as trustee for National Bank of Boonville, named as codefendants with the owners of the real estate, R. Stuart Davis, Jr., and Margaret T. Davis. At the conclusion of the evidence, none of the parties requested findings of fact or conclusions of law, but the court did file his own findings and judgment as permitted by Rule 73.01 V.A.M.R.

This appeal was originally lodged in the Supreme Court of Missouri, but was transferred here by that court upon the ground that the appeal was not within the monetary jurisdiction of that court.

The transcript submitted on this appeal shows that the plaintiffs in each of the four cases alleged that the owners, Davis, had become non-residents of the state of Missouri, had absconded, and concealed themselves, so that service of process could not be had upon them personally, and requested the court to order service by publication under Rule 54.08(c) V.A.M.R., but such transcript is silent as to whether the necessary affidavit or verification was filed or such service by publication actually obtained.

Consonant with our duty to determine whether we have jurisdiction, City of Han-

nibal v. Winchester, Mo.App., 360 S.W.2d 371; Vol. 2 Mo. Digest, Appeal and Error, ☞23, p. 595; and in accordance with the provisions of Rule 81.12(c) (formerly Rule 82.12(c)) V.A.M.R.; and Section 512.110 (3) V.A.M.S., the clerk of the circuit court of Cooper County was directed to send to this court the original files in each of the four consolidated cases, and this was done.

An examination of these files shows that each of the four petitions was duly verified as required by law; that an order of publication was issued by the court in each of said cases; proper legal notice was published in the Boonville Daily News, summoning the defendants Davis, and the publisher's affidavit was properly filed in each of the cases. Service by publication was therefore completed as to the defendants Davis, but they did not file any pleadings or appear at the trial, either in person or by counsel.

The events which gave rise to this litigation may be summarized as follows:

The defendant, R. Stuart Davis, Jr., was an engineer employed by the McGraw-Edison Company at Boonville, Missouri, and in the early part of 1967, he and his wife, Margaret T. Davis, arranged to purchase a piece of residential property in Boonville, which was described as one of the "show places" in that city, and the president of the defendant bank stated it was his opinion that the property, as it stood when the Davises purchased it, was worth approximately $30,000.

The Davises made arrangements with the defendant Bank to borrow the sum of $27,000 to be secured by a first deed of trust upon said property.

The arrangements with reference to this loan were that $15,000 of the proceeds were given to defendants Davis as part of the purchase price of said property. The remaining $12,000 of the proceeds of the loan was placed into a "blocked account", denominated "Construction Account", to be used for material and labor on the property in connection with a remodeling project contemplated by the Davises. The funds from this account could be released only in the amount of $3,000 at any one time, and withdrawals therefrom required the signature of both Davis and an officer of the defendant bank, and could be made only if at the time of such withdrawal Mr. Davis put up $2,000 of his own funds. The funds thus realized from the blocked account and Davis' money were then placed in a "Special Account" for the purpose of paying labor and material bills. While Mr. Davis could draw on such account under his own signature, such checks drawn by Davis, according to witness Thomas J. Miller, vice president of the defendant bank and the representative of the bank actively in charge of this transaction, would not be charged against such account until they were "viewed" and approved by an officer of the bank, who would check them to make sure they were payable for materials and labor and properly endorsed by the payee. Such checks would not be paid without this approval.

When these loan arrangements had been completed, Mr. Davis, owner of the property, entered into contracts which were apparently oral with each of the four plaintiffs, to furnish certain materials and perform certain work with reference to the remodeling of the house, then situated upon the land involved. It thus is clearly shown in the record that each of the plaintiffs occupied the position of general contractor, as distinguished from subcontractors, laborers or journeymen, as contemplated under the provisions of the Missouri mechanic's lien law.

The evidence was also abundantly clear that before any of the plaintiffs incorporated any material into, or performed any labor upon, the property in question, numerous inquiries were made by the plaintiffs or their representatives of the defendant bank with reference to the Davis loan.

There is a sharp dispute in the record as to whether or not these inquiries were made and as to the extent thereof and the response of the bank thereto.

The plaintiffs offered substantial evidence that frequent and continuing inquiries were made to Garth Clinkscales, the president of the defendant bank, and to Thomas J. Miller, the vice president, and that, these gentlemen assured the plaintiffs and their representatives that the Davis loan had been made; that the money "was there" and "available" for the construction work; that Davis was a "good risk"; that they had nothing to worry about; that "the money was good"; that they would be paid; and that everything was "all right" and "fine". This, before any materials were furnished or labor performed. Each of the four plaintiffs relied upon these assurances and representations by the bank and proceeded with the work.

The plaintiffs further offered evidence that when the payment of their accounts submitted periodically to Mr. Davis were not promptly paid, further inquiry was made of the bank officials, and further assurances given to them that the money was or soon would be available; that their accounts were good, and that they would be paid. In reliance upon these further representations and assurances, they continued with the work.

As the work progressed into May, June and July, 1967, the plaintiffs' accounts were either not paid or only partially paid, which resulted in a cessation of the work and the filing of the liens, followed by these proceedings.

Before trial, the parties to the consolidated actions entered into a stipulation of facts wherein it was agreed that the cases be consolidated and tried as a jury-waived case before the court. Further, it was stipulated that all work done and materials furnished by the plaintiffs was actually performed and furnished on the premises in question by authority of the defendants Davis, and that the charges made therefor were usual and reasonable. It was further stipulated that the Davises became the owners of the fee of the property by deed dated January 18, 1967, and recorded in Cooper County, Missouri on March 10, 1967, at 11:25 o'clock a. m., and that they gave a deed of trust to secure a $27,000 note payable to the defendant bank dated March 8, 1967 and recorded March 10, 1967, at 1:05 o'clock p. m. It was further stipulated that no work had been performed or materials furnished by the plaintiffs prior to March 10, 1967. It was further stipulated that all of the claims of the plaintiffs, except that of Donald E. Winningham, Sr. d/b/a Central Waterproofing Company, were timely filed and the petitions to enforce such liens were timely filed, but that the defendant bank and trustee asserted that the Winningham claim was untimely filed.

It thus appears that the only issue between the plaintiffs, other than Winningham, is the issue of priority as between their timely filed liens and suits and the lien of the defendant bank under its deed of trust. Since this would also be the only issue between plaintiff Winningham and the defendants bank and trustee, if the Winningham lien was timely filed, this matter should be first resolved.

Winningham entered into a contract with owner Davis, which consisted of exterior work of sandblasting to remove the paint from the brick, cutting out the mortar, repointing with mortar, caulking around windows, inspection of metal flashings and chimneys, and waterproofing, if the brick was not to be repainted. He undertook this work upon a cost-plus (time-material) basis. He made his billings on a running account commencing April 11, 1967, the total amount of which was $5,878.81, upon which he was paid $1100 on May 22nd and $1200 on July 3rd, leaving an unpaid balance of $3,579.81.

On May 1, 1967, he suspended his work on the contract because of non-payment. On July 14, 1967, at the request of the owner, Davis, he returned to the job because of a purported leak. He did not discover any leak, but did apply four gallons of silicone on the brickwork. This is a waterproofing operation which is usually performed after the sandblasting and pointing but which he had not theretofore done because "he (Davis) was thinking about

painting it back over the brick." For this work on July 14, 1967, he added to his running account $36.88 for time and material.

■ Under this testimony, the trial court properly found that the limitation period with reference to Winningham's mechanic's lien did not commence to run until July 14, 1967, and that he perfected his lien within the mandate of the statutes and in connection therewith stood on an even basis with the other mechanic's lien claimants.

The law is clear in Missouri, as stated in Badger Lumber Co. v. W. F. Lyons Ice & Power Co., 174 Mo.App. 414, 160 S.W. 49, l. c. 52:

"* * * But, if the evidence shows that all the items were furnished 'under and by virtue of' one contract, then the vendor is entitled to his lien, although there may be facts and circumstances showing that they were furnished at different times, and were rendered necessary by different conditions. A running account is deemed an entire contract, and, for the purpose of fixing the time for filing the account to perfect a mechanic's lien, each item of the account relates to the last item delivered * * * But, unless there is evidence to show a separate and distinct contract as to the last items, the account will be taken and considered, as it appears, to be, a running account arising under and by virtue of the contract out of which the account originally grew."

This court further said in Badger Lumber Co., quoting from Phillips on Mechanic's Liens, l.c. 52:

" 'But when material is furnished, all going to the same general purpose, as the building of a house or any of its parts, though such work be done or ordered at different times, yet if the several parts form an entire whole, or are so connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct matters of settlements, the whole account must be treated as a unit, or as being but a single contract.' "

General Fire Extinguisher Co. v. Schwartz Bros. Commission Co., 165 Mo. 171, 65 S.W. 318, 323; Darlington Lumber Co. v. James T. Smith Building Co., 134 Mo.App. 316, 114 S.W. 77, 79; Tull v. Fletcher, 196 Mo.App. 573, 196 S.W. 436, 439; Christopher & Simpson Architectural Iron & Foundry Co. v. E. A. Steininger Construction Co., 200 Mo.App. 33, 205 S.W. 278, 281; Cleary v. Siemers-Marshall Electric Co., Mo.App., 296 S.W. 448, 451, 452.

■ All of the above cases are uniform in holding that the mere lapse of time between the items incorporated in a contract on a running account is not sufficient to commence the running of the mechanic's lien periods of limitation.

Nor is it significant that the last item or labor may be a small item. Harry Cooper Supply Co. v. Rolla National Building Co., Mo.App., 66 S.W.2d 591, 596.

Of course, these authorities and others hold that where material or labor are not part of the contract, or are the subject matter of a separate contract, or are furnished and built fraudulently or in bad faith for the sole purpose of tolling mechanic's liens limitation periods, the rule does not apply.

There is no evidence in this record that the work performed and the materials furnished by Winningham on July 14, 1967 would fall within this excluded category. On the contrary, these services were furnished at the specific request of the owner Davis and were directly related to the work previously performed by Winningham under a single contract and a continuing running account.

The Winningham mechanic's lien claim should and will be considered as timely filed and on an equal footing with the other three claims. There remains for decision only the matter of priority between the mechanic's liens and the deed of trust.

■ The court below in its findings and judgment held that Section 429.050 was applicable to this case, and under the terms of that statute the plaintiffs were given absolute priority over the lien of the prior deed of trust. This section provides in substance that mechanic's and materialmen's liens shall be given preference to any prior lien on the *land* and that in the enforcement of such preferential liens in certain cases the building structures can be removed from the land and sold under execution. Our conclusion is that such statute applies only to new construction and is not applicable to the case at bar.

The great weight of authority in Missouri supports this interpretation of the statute. This, upon the theory that the security of a prior mortgage holder on vacant land is substantially enhanced by the erection of new structures thereon and should not be given any priority over mechanic's liens for unpaid bills for material and labor that went into such new structure and the removal of such new structure or separate sale thereof leaves the original mortgage holder with the same security for his loan as he had before the new construction.

On the other hand, when a prior mortgage is given upon land and an existing structure, and such structure is improved or repaired, the mechanic's liens arising incident to such improvement or repair are given no priority nor should the mechanic lienors be permitted to disturb by removal or sale the existing structure so improved or repaired.

In the early case of Haeussler v. Thomas, 4 Mo.App. 463, in analyzing the then statute, now Section 429.050, the court said, l.c. 467:

"It cannot be the intention of the Legislature to carefully regard the interests of third parties as existing in the land, and to totally disregard the interests of third parties as existing in the buildings, at the inception of the mechanic's lien. * *

But where the mechanic builds a new building, here is property on which the prior mortgagee did not rely, and so, in favor of the mechanic, the statute does away with the rule that makes the building follow the land and, *quo ad hoc,* separates the two * * * But a mortgagee who has paid his money for a lien on buildings cannot be required to abandon his lien as against the lien claim of a mechanic who subsequently puts repairs on the building, because no means are afforded for separating the two interests in the building, and because as between the mortgagee and the lienholder, the rights of the former were vested before those of the latter came into being * * *"

Perhaps the most cited authority is the case of Schulenberg v. Hayden, 146 Mo. 583, 48 S.W. 472, where the court considered a claim for priority under the then statute (now Section 429.050 V.A.M.S.), where an existing house encumbered with a prior mortgage was two-thirds destroyed by fire and the lienor's claim arose from material and labor expended in the reconstruction of the house. The mortgagor was not a party to the contract and there was no question of estoppel or waiver.

The court held that the mechanic's lien could attach to and extend no further than the owner's equity of redemption, and that the preference granted him under the statute applied only to new construction and not the restoration of previously encumbered structures.

To like effect, McLaren v. International Real Estate & Imp. Co., 126 Mo.App. 254, 102 S.W. 1105, 1106; Elliott & Barry Engineering Co. v. Baker, 134 Mo.App. 95, 114 S.W. 71, 72, 73; May v. Mode, 142 Mo.App. 656, 123 S.W. 523, 527; Ford v. Dixon, 171 Mo.App. 275, 157 S.W. 99, 101; Orear v. Dierks Lumber Co., 188 Mo.App. 729, 176 S.W. 467, 468; Jones Lumber Co. v. Snyder, 221 Mo.App. 1227, 300 S.W. 850, 851–2; Long v. Kissee, 223 Mo.App. 996, 24 S.W.2d 693, 694; Masterson v. Roberts, 336 Mo. 158, 78 S.W.2d 856, 860.

We conclude, therefore, that the plaintiffs do not enjoy a preferential priority over the bank's deed of trust by reason of Section 429.050 V.A.M.S. because the material and labor furnished on the Davis home was not new construction, although it must be admitted that the contemplated repairs and improvements to the existing mortgaged residence were substantial in character.

■ Under the record before us, however, we hold that the defendant bank waived, and is now estopped, to assert any priority of its encumbrance upon the Davis property and hold, as did the court below, that the plaintiffs' mechanic's liens are superior and prior to the lien of the defendant bank and trustee.

Although the president of the bank, Clinkscales, testified that the property purchased by Davis was reasonably worth $30,000 before any improvements or repairs, and that he was satisfied with the security for the $27,000 note, both he and witness Miller, vice president of the bank, directly in charge of the Davis loan, testified that they knew of Davis' plans for improvement and repair of the property and, indeed, had put $12,000 of the loan (to be matched by $8,000 of Davis' money) in a blocked account, over which the bank retained control. Further, Miller testified that any funds, the source of which was the blocked account plus Davis' money, were placed in a special or construction account, over which the bank maintained strict surveillance and against which no checks were paid until the bank was satisfied that the funds had been expended upon improvement of their security.

Before any materials were furnished, the manager of the lumber company (plaintiff Trout's Investment, Inc.), one Denomme, went to the bank and was told that a loan had been made for the improvements and that the "money would be there to pay", "everything was all right", "fine", "money was good", and that thereafter, when his company's bills became delinquent, he went to the bank and was assured and reassured that the payment would be forthcoming. He made the inquiries for his company and for the other claimants, and communicated the information to them.

Plaintiff Winningham made inquiry of Clinkscales at the bank and was told that the loan had been made for the purpose of paying for the work; that Davis was a good risk, and that he would be paid. When his account became delinquent, he was advised by both Clinkscales and Miller that he "could expect some money in a short time and that he would be paid."

Plaintiff Zoeller inquired at the bank about his bill and was encouraged by vice president Miller to continue his work when Miller told him Davis "had a loan and the money is available" for remodeling purposes. When his bills were in arrears, he saw Miller on several occasions and received the same assurances.

Plaintiff Gerhardt, before he had installed any material or done any work, went to the bank and talked to Clinkscales, the president, as to the availability of funds, and was told that Davis had made the necessary arrangement to pay for the improvements; that the "money was there" and "that the money was good".

And later, on behalf of Gerhardt, witness Henry Schler went to the bank to inquire about payment of the Gerhardt bill and was told by vice president Miller that Davis had a good job with McGraw Electric Company; that the bank had made Davis a loan and that the money would be available to take care of the improvements and "that Gerhardt would not be hurt". Schler reported these conversations to Gerhardt.

Witness Ed Gerke was "sort of a foreman" on the job and was in contact with several of the plaintiffs and felt a certain responsibility that they be paid and was advised about the bank financing it and as-

sured generally that the workers would be paid.

While both Clinkscales the president, and Miller the vice president, denied that any such assurances had been given (and indeed Clinkscales denied any conversations with anyone aside from Miller about the Davis loan) the credibility of the witnesses could be best judged by the trial court and he, in fact, found that these representations and assurances had been made by the bank and had been relied upon by the plaintiffs. No reason appears before us as to why the trial court's evaluation of this evidence should not be accepted by us.

Under these circumstances, it seems apparent that all of the elements of waiver and estoppel are present in this case. The bank had full knowledge of the remodeling project, exercised control over the loan funds for this purpose, and fully realized that unpaid bills for material and labor would become lienable. Representations and assurances were made by the defendants' two principal officers and they were relied upon by the plaintiffs, to their injury and damage. The actions of the bank officials in so doing in fact induced the plaintiffs to furnish the material and labor which form the basis for their respective claims for mechanic's liens.

■ It has long been the law, both in Missouri and elsewhere, that a mortgagee may waive the priority of his lien and be estopped from asserting such priority. 57 C.J.S. Mechanics' Liens § 204(1), p. 768:

"* * * A mortgagee may, by reason of his having induced the furnishing of labor or material be precluded from asserting the priority of the mortgage over a mechanic's lien."

In the case of H. B. Deal Construction Co. v. Labor Discount Center, Inc., Mo., 418 S.W.2d 940, the priority of a mortgage involving *new construction* of a shopping center was held to have been subordinated, not only under the terms of Section 429.-050 V.A.M.S., but also under the doctrine of waiver. The court there said, l.c. 952:

"Under the doctrine of waiver a mortgagee by reason of having induced the furnishing of labor and material may be precluded from asserting the priority of the mortgage over a mechanic's lien."

In that case, the officials of the Wellston Bank, mortgagee, controlled the financial arrangements and frequently conferred with the contractors, subcontractors, mechanics and materialmen, and the court held that its actions in so doing extended far beyond merely consent or failure to object to the improvements and concluded, l.c. 954:

"By its acts and conduct the bank caused, procured and induced all of the direct contractors and subcontractors to perform the necessary services and to supply the needed materials for the construction of the improvement. Under these circumstances the bank is in no position to insist upon the subordination of the liens of the mechanics and materialmen and is taken to have waived the priority of the lien of the deed of trust in favor of the liens of the mechanic's lien claimants. The plaintiff and the other mechanic's lien claimants, therefore, have a paramount mechanic's lien not only on the improvements (by virtue of Section 429.-050) but also on the land itself."

The court in H. B. Deal Construction Company cites with approval and follows the case of Jefferson County Lumber Co. v. Robinson, Mo.App., 121 S.W.2d 209, 212, and Magidson v. Stern, 235 Mo.App. 1039, 148 S.W.2d 144, 153.

We therefore hold that the mechanic's liens of the plaintiffs are superior and paramount to the lien of the defendant bank and trustee, and that such mechanic's liens

are applicable as superior liens on both the land and the improvements owned by the defendants Davis.

The judgment below should be affirmed in substance, but must be amended as to form. We are empowered to do this under Rule 84.14 V.A.M.R.

■ As noted above, personal service could not be obtained upon the owners-defendants Davis, but substituted service was obtained upon them by publication under Rule 54.08 V.A.M.R. Such service, however, will not support a personal judgment against them. Under such circumstances, the law is clear as to the type of judgment authorized. Section 429.230 V.A.M.S. (Rule 101.08 V.A.M.R.) provides:

"When the debtor has not been served with summons according to law, and has not appeared, but has been lawfully notified by publication, the judgment, if for the plaintiff, shall be that he recover the amount of the indebtedness found to be due, and costs of the suit, to be levied of the property charged with the lien therefor, which said property shall be correctly described in said judgment."

Murdock v. Hillyer, 45 Mo.App. 287, 293; Mathews v. Heisler, 58 Mo.App. 145, 147; Vol. 1A, Missouri Practice, Mechanic's Liens, Section 1142, p. 311; Vol. 10, Missouri Practice Procedural Forms, Rule 101.08, Form 1, p. 612, and Rule 74.09, Form 4, pp. 57–8.

The judgment should include the following:

1. A finding of the issue as to whether or not the claim of plaintiff Don E. Winningham, Sr. was timely filed in favor of said plaintiff and against the defendants.

2. A correct legal description of property involved.

3. That the amount of the indebtedness due each plaintiff is Trout Investments, Inc. d/b/a Boonville Lumber Company, $3,922.94; Don E. Winningham, Sr. d/b/a Central Waterproofing Company, $3,579.81; Fred Oerly and Frank P. Zoeller, a partnership d/b/a Oerly and Zoeller Masonry Contractors, $1,487.24; and Eugene H. Gerhardt, an individual d/b/a Gene Gerhardt Plumbing, Heating and Air Conditioning, $3,703.74.

4. That each of said plaintiffs have and recover from the defendants R. Stuart Davis, Jr. and Margaret T. Davis the amount of such indebtedness and the costs of these suits, to be levied of the property charged.

5. That such judgments constitute and are mechanic's liens on the improvements and land owned by the defendants Davis, as described, to be levied of such property charged with such liens, and that special execution issue in favor of each plaintiff on his judgment.

6. That such liens, and each of them, are prior and superior to the lien of the deed of trust held on such land by defendant Richard J. Blanck, as trustee for the defendant National Bank of Boonville, securing the promissory note for the face amount of $27,000.00, dated March 8, 1967, and recorded in the office of the recorder of deeds for Cooper County, Missouri on March 10, 1967 at 1:05 o'clock p. m.

The judgment is affirmed and the cause remanded with directions to the trial court to amend the judgment for the plaintiffs in accordance with this opinion.